Dashiell
vs.
Attorney General

## COURT OF APPEALS, JUNE TERM, 1822.

### DASHIELL *et al. vs.* THE ATTORNEY GENERAL.

The peculiar law of charities originated in the statute of charitable uses of 43 *Eliz. ch.* 4, and independent of that statute a court of chancery cannot sustain and enforce a devise to charitable uses, which, if not to a charity, would on general principles be void

J. C. by his will directs the income of his estate to be paid over by his executors to certain trustees, and that the residue to be equally divided, one half to be applied towards finding, &c. the poor children belonging to the congregation of *St. Peter's* Protestant Episcopal Church &c. *Held,* that such bequest is too vague and indefinite to be carried into effect, and is therefore void, and that the trust results for the benefit of the next of kin of the testator

A devise to trustees for the benefit of an indefinite object is equally as invalid as an immediate devise to such an object

The statute of 43 *Eliz. ch* 4, is not in force in this state

*Kilty's* Report of *British* Statutes—The authority it is entitled to

APPEAL from *Baltimore* county court sitting as a court of equity. This was an information and bill of complaint filed in the name of the Attorney General, at and by the relation of the trustees of *Hillsborough* school in *Caroline* county, and of the vestry of *Saint Peter's* church in the city of *Baltimore*, and the trustees of *Saint Peter's* school in the said city, on the behalf of themselves and of *Peter Harman*, &c. poor children belonging to the congregation of *Saint Peter's* Protestant Episcopal Church in the city of *Baltimore*, and of the rest of the poor children belonging to the said congregation, against the Reverend *George Dashiell, George W. Dashiell* and *Mary* his wife, to establish certain charitable devises in favour of the relators and complainants, and to enforce the execution of a trust for that purpose in the will of *James Corrie;* dated the 12th of March 1805. The will referred to, after appointing *George* and *John Yates* executors, and the appellant, *George Dashiell*, and *Henry Downes*, trustees of the testator's estate, and guardians of his daughter and only child, and directing the mode in which his estate should be administered, and the proceeds (after payment of his debts,) invested in certain banks by his executors, and be by them paid over to his trustees, contains the following clauses— "I will that my daughter *Mary* shall have a woman to nurse and attend her; and all the necessary expenses attending my daughter *Mary*, and the expenses of a woman to attend her until she attains the age of eighteen years, shall be paid out of the income of my estate, received by my trustees from my executors, and the residue of the income, after deducting my daughter *Mary*, and her servant's expenses, shall be appropriated, until she attains the above age of eighteen years, as follows: It shall be equally divided, one half to be applied towards *feeding, clothing and educating, the poor children belonging to the congregation of Saint Peter's protestant episcopal church in the city of Baltimore;* the other half to be applied *towards feeding,*

*clothing and educating the poor children of Caroline coun-*
*ty, in the state of Maryland, which attends the poor or cha-*
*rity school established at Hillsborough, in said county,* the
trustees of which school are to receive from my trustees
the aforesaid appropriation, in payments at every six or
twelve months, and appropriate the same in the manner I
have now willed; and should my daughter *Mary* die be-
fore she becomes eighteen years of age, in such case I will
and bequeath the whole income of my estate to be equally
divided, one half to be applied towards feeding, clothing
and educating, of the poor children belonging to the con-
gregation of *Saint Peter's* Protestant Episcopal Church in
the city of *Baltimore;* the other half to be applied as afore-
said for feeding, clothing and educating, the poor children
of *Caroline* county, in the state of *Maryland,* which at-
tends the poor or charity school established at *Hillsborough*
in said county.   I will that should my daughter *Mary,* on
her becoming marriageable, connect herself by matrimony
to a man of good moral character, and have the consent of
one or both of her guardians, or one or both of my execu-
tors, to the connexion she forms, that she shall be entitled
to receive from my trustees, and they shall pay to her for
ever, the one half of the net annual income of my estate;
the other remaining one half of the annual income will then be
equally divided by my trustees, the one part of which to be
applied towards feeding, clothing and educating, of the poor
children belonging to the congregation of *Saint Peter's* Pro-
testant Episcopal Church in the city of *Baltimore,* and
the other part to the feeding, clothing and educating,
the poor children of *Caroline* county, in the state of
*Maryland,* which attends the poor or charity school es-
tablished at *Hillsborough* in said county.   But should my
daughter *Mary,* on the contrary, marry any man in a clan-
destine manner, without obtaining the consent of one or
both of her guardians, or one or both of my executors, they
shall, in such case, withhold from her any benefit from my
funds, until they ascertain how far the man she may so
marry is worthy of receiving any benefit from my funds
arising through her.   And should my daughter *Mary* not
form any connexion in matrimony after attaining the age of
eighteen years, she will be entitled to have the same sup-
port, with a servant woman to attend her, as she had until
she attained the age of eighteen years, with a further al-

lowance of what money her guardians or my executors may consider necessary for her to defray all decent expenses." "I will, that if at any future period any of my relations should require assistance, to be supported, clothed and educated, that my trustees, in virtue of this will, shall give the preference to them, either in the county of *Caroline,* in the state of *Maryland,* or the city of *Baltimore,* in said state, or in any other place; they shall attend to their wants as aforesaid in preference to all others." The will was proved on the 18th of May 1805. On the 25th of January 1806, the trustees of *Saint Peter's* school were legally incorporated. The *answers* of the defendants insisted, that the relators were not entitled to relief, and that the devise conferred no interest which could be established in their favour, but that the same was void, and a trust only for the next of kin, the testator's daughter *Mary,* one of the defendants. The county court decreed *pro forma,* that the charitable bequests and uses made and created by the will of *James Corrie,* ought to be established, and the trusts thereof performed and carried into execution. That one moiety of the whole estate, &c. should remain vested in the defendant *George Dashiell,* to be by him held and applied for ever thereafter for the benefit of the daughter of the said *Corrie,* now *Mary Dashiell,* wife of the defendant, *George W. Dashiell,* and her legal representatives, as directed by the provisions of the said will. That the other moiety of the whole estate, &c. be divided into two equal moieties, whereof one moiety was to be assigned, &c. by the defendant, *George Dashiell,* surviving trustee under the said will, to *The Trustees of Saint Peter's School* in the city of *Baltimore,* in the manner thereinafter mentioned and directed. And as between the relators and the defendant, *George Dashiell,* it was decreed, &c. that the said *George Dashiell* be removed and discharged from the trust under the said will, so far as it related to the said relators, and that *The Trustees of Saint Peter's School,* and their successors, should be substituted and appointed trustees to execute the trusts under and created by the said will, so far as concerned "the poor children belonging to the congregation of *Saint Peter's* Protestant Episcopal Church in the city of *Baltimore,*" and that the said *George Dashiell,* surviving trustee as aforesaid, should assign, &c. one moiety of the charity estate, that is to say, one fourth part of the

whole estate, &c. now in his hands as surviving trustee as JUNE 1822
aforesaid, or to which he had any right or title, as such
trustee, unto "The Trustees of *Saint Peter's* School," and
their successors, for ever, in severalty, and not subject to
the control of any person or body politic whatever, to and
upon the charitable uses declared by the testator, *James
Corrie,* in favour of "the poor children belonging to the
congregation of *Saint Peter's* Protestant Episcopal Church
in the city of *Baltimore,*" and to be by the said trustees of
*Saint Peter's* school for ever thereafter held and applied
to the charitable use aforesaid, and none other. From
which decree the defendants appealed to this court.

The cause was argued before BUCHANAN, EARLE, MAR-
TIN, and STEPHEN, J.

*Taney, Winder,* and *Murray,* for the appellants, contend-
ed, 1. That the devise in *Corrie's* will, intended for the
benefit of the relators, was void for uncertainty, and was
not cured by the statute of 43 *Elizabeth, ch.* 4, for regulat-
ing charitable uses.

2. That if such devise was within the remedy of that
statute, the statute was not in force in this state.

3. That said devise was void under the 34th article of
the declaration of rights of this state.

On the *first point* they argued, that the relators, the per-
sons intended to be benefited by the devise, were not, in-
dependent of the statute, by the general principles of the
law of devises, designated with sufficient legal certainty.
They cited *Pow.* on *Dev.* 276, 277, (418.) 3 *Com. Dig.*
tit. *Devise,* (K.) 412. *Taylor vs. Sayer,* Cro. *Eliz.* 742.
*Anon.* 1 *P. Wms.* 327. 4 *Bae. Ab.* tit. *Legacies,* 329, 330.
*The Baptist Association vs. Hart's Ex'rs,* 4 *Wheat.* 29.
The acts of 1802, *ch.* 105, and 1803, *ch.* 45, establishing
and incorporating *St. Peter's* Church and school. 3 *Com.
Dig.* tit. *Devise,* 410. That the general principle of the
law of charity was, that all the defects in the form of as-
surance were cured by the statute of charitable uses, and
were to be enforced by the court. That the object of the
statute of 43 *Elizabeth, ch.* 4, was to supply all defects in
the assurance, and to give effect to every devise or gift to
charity which would before have been void, and that the doc-
trine of charitable uses originated from that statute. They
cited 2 *Fonbl.* tit. *Charities, s.* 2, *p.* 209, 211. *Duke's*

*Charitable Uses,* 371. *The Baptist Association* vs. *Hart,* 4 *Wheat.* 1, 29. *The Attorney-General* vs. *Bowyer,* 3 *Ves.* 726. *Morice* vs. *The Bishop of Durham,* 10 *Ves.* 540. 9 *Ves.* 405, S. C. *Mills* vs. *Farmer,* 1 *Merivale,* 87. 4 *Wheat. (appendix,)* 5. *Duke,* 355, 356, 359, 360, 362, 366, 368, 370, 379, 385. 2 *Fonbl.* 206. *Dartmouth College* vs. *Woodward,* 4 *Wheat.* 677. That the chancellor in the province, had not the same powers as the Lord Chancellor had in *England, Snow* vs. *Gerrard* in the upper house in 1663. That the case of charities did not belong to the court of chancery, exclusively as a court of equity. *Cooper's Plead.* 27, 101, 102. 2 *Fonbl.* 29. *The Baptist Association* vs. *Hart,* 4 *Wheat.* 37. Unless it was a charity within the statute of *Elizabeth,* there was no power to sue in the name of the Attorney-General, and there could be no relief by information. *The Attorney-General* vs. *Hewer,* 2 *Vern.* 387. *The Attorney-General* vs. *Newcombe,* 14 *Ves.* 7. Where the object of the donor is definite, but cannot be effected, the court will not look to another object, but let the property go to the next of kin or the heir at law. 1 *Bac. Ab.* tit. *Charitable Uses,* (b.) 587, *(notes.)* *The Attorney-General* vs. *The Bishop of Oxford,* 1 *Bro. Chan. Rep.* 444. So where the testator discovered no general intention beyond that specified in his will, and that was disappointed. *The Attorney-General* vs. *Goulding,* 2 *Bro. Chan. Rep.* 428. *The Attorney-General* vs. *The Earl of Winchelsea,* 3 *Bro. Chan. Rep.* 379. So a bequest to the testators *most necessitous* relations would go according to the statute of distributions. *Widmore* vs. *Woodroffe, Ambl.* 640. *Jones* vs. *Beall,* 2 *Vern.* 381. That where there is a general intention as to the charity, it might be appropriated to particular charities, but not where there was a particular bequest to a particular object. *De Costa* vs. *De Pas, Ambl.* 228. *Moggbridge* vs. *Thackwell,* 7 *Ves.* 80. *Mills* vs. *Farmer,* 1 *Mer.* 55.

On the *second point,* they referred to the *Declaration of Rights,* art. 3. *The State* vs. *Buchanan, et al. (ante* 317.) *Kilty's Rep. of the Stat.* 87. *Resol.* of 1794, No. 10; 1809, No. 22; 1810, No. 21, and 1816, No. 69. *Whittington* vs. *Polk,* 1 *Harr. & Johns.* 250. *Rep. of the Stat. in Pennsylv.* 5 *Binny's Rep.* 595. The acts of 1704, *ch.* 38; 1722, *ch.* 4, and 1723, *ch.* 19. *Jackson* vs. *Hammond,* 2 *Caine's Cases,* 337. Colonists may adopt or reject the laws of the mother country. *Grotius, B* 2, *s.* 10. *Swift's*

*Laws of Con.* 40. The doctrine of charity, whether un-
der the statute, or common law, was not a legal, but a pre-
rogative one, and such as could not be authorised under
our form of government. *Moggbridge vs. Thackwell,* 1 *Ves.*
*jr.* 464, and 7 *Ves.* 35. 5 *Bac. Ab.* tit. *Prerogative,* (D. 5.)
534. *Cooper's Plead.* 219. 3 *Blk. Com.* 427. *Highmore*
*on Lunacy,* 28. No appeal lay from the chancellor on a
decree for charitable uses under the statute. *Saul vs. Wil-*
*son,* 2 *Vern.* 118. The statutes of *mortmain* were ex-
pressly introduced as to all the landed- property in the
province, by the conditions of plantations in 1648. *Kilty's*
*Land Hold. Ass.* 42.

*Harper,* and *R. Johnson,* for the appellees, contended,
1. That the bequest was good under the statute of *Eliza-*
*beth;* and that that statute was in force in this state. 2. That
a devise similar to the present, independent of the statute,
might be enforced in chancery. They argued that a devise
to charity in general was valid by the statute. So was a
devise to the poor generally; and if so, that a devise to the
poor of a particular congregation was of course good. If it
did not come under the statute, it was because the remedy
afforded by the statute was not necessary. The statute of
*Elizabeth,* which is set out in *Duke,* 127, repealed the
statute of *mortmain,* and was intended to remedy de-
vises of this kind. That it was in force in this state, they
referred to the *Decl. of Rights, art.* 3. 1 *Blk. Com.* 107.
2 *P. Wms.* 75. *Blankard vs. Galdy,* 2 *Salk.* 411. *Smith vs.*
*Gould, Ibid* 666. *The State vs. Buchanan, et al. (ante* 317.)
*King vs. Bond,* 4 *Burr.* 2500. 1 *Tucker's Blk.* (*Appen-*
*dix,*) 412, 443. Acts of 1704, *ch.* 38, 1723, *ch.* 19. An ap-
peal would lie from a decision under the statute for chari-
table uses. 3 *Blk. Com.* 437.

2. That the bequest could be supported at common law,
independent of the statute of *Elizabeth.* They cited *Pow.*
*on Dev.* 428, 421, 422. *Isaac vs. Defriez, Ambl.* 595.
*Brundsden vs. Woolredge, Ibid* 507. 4 *Bac. Ab.* tit. *Lega-*
*cies & Devises,* 329, (*notes.*) *Duke,* 360, 361. 4 *Coke,* 109,
111, 115, 116. 1 *Coke,* 22, b. *The Attorney-General. vs.*
*Bowyer,* 3 *Ves.* 725. The statute of *Elizabeth* gave ef-
fect to some devises which before were invalid; but the
greater part of those it embraced could be enforced before,
and informations for charitable uses did not grow up un-
der it. *Porter's* case, 1 *Coke,* 22. *Eyre vs. The Countess*

June 1822.

Dashiell
vs
Attorney General

of *Shaftsbury*, 2 *P. Wms.* 103, 110. *Falkland vs. Bertie*, 2 *Vern.* 342. *Christ's College, Cambridge*, 1 *W. Blk. Rep.* 91. 3 *Blk. Com.* 427. *Duke*, 108, 163. *Dig. of Chan. Rep.* 40, pl. 2, 12, 13. 2. *Cas. in Chan.* 18. Where the persons to take were capable of being identified, the court of chancery would supply the place of trustees; but here there were trustees sufficiently designated, as were also the *cestui que trusts*. *Brundsden vs. Woolredge, Ambl.* 507. *Widmore vs. Woodroffe, Ibid* 636. That the right might be enforced in this state under our constitution, they referred to 3 *Blk. Com.* 47, and *the Const. art.* 36.

BUCHANAN, J. delivered the opinion of the court. This case has been ably and elaborately discussed; and on an attentive examination of the numerous authorities referred to, and relied upon in argument by the counsel on either side, we have come to this conclusion:. That the peculiar law of charities originated in the statute 43 *Elizabeth*, for regulating charitable uses, and that independent of that statute, a court of chancery cannot, in the exercise of its ordinary jurisdiction, sustain and enforce a bequest to charitable uses, which, if not a charity, would on general principles be void; and in this we are supported by the decision of the Supreme Court of the *United States*, in the case of *The Baptist Association against Hart's Executors*, 4 *Wheaton*, 1, in which all the principal authorities are reviewed, and the subject very fully investigated:.

It is an admitted general principle, that a vague bequest, the object of which is indefinite, cannot be established in a court of equity.

Is this a bequest of that description? We think it clearly is. The testator, by his will, appointed the appellant, *George Dashiell*, and *Henry Downs*, trustees of his estate, and guardians of his only child, with instructions to his executors to pay over to them the annual income of his estate, to be by them appropriated according to the provisions of the will, which, after providing among other things, for the payment of his debts, and the support and education of his daughter, directs the residue of the income of his estate "to be equally divided, one half to be applied towards feeding, clothing and educating, the poor children belonging to the congregation of *Saint Peter's Protestant Episcopal Church* in the city of *Baltimore*," &c. with cer-

tain provisions for the eventual increase or decrease of the fund so set apart for that purpose.

Wherever the word *poor* or *poorest*, has been used as a term of description in a devise or bequest, it has been held to be insufficient, for uncertainty; as a devise to twenty of the poorest of the testator's kindred. *Powel on Devises*, 419. 3 *Com. Dig.* 412, with many other authorities, to which it is unnecessary to refer. In this case the bequest is quite as vague and indefinite as if it was to twenty of the testator's poorest relations, or to his poor relations generally, or to the poor people of a particular county.

Who are "the poor children belonging to the congregation of *Saint Peter's Protestant Episcopal Church* in the city of *Baltimore?*" No court can know, or have the means of ascertaining; and the description of the *cestui que trust* is so vague, that none can be found who, upon the general principles of equity, can entitle themselves to the benefit of the trust.

It seems to be supposed, that the power of ascertaining and designating "the poor children belonging to the congregation of *Saint Peter's Church*," is given by the will to the trustees, and that the beneficial interest of the *cestui que trust* may be sustained by reason of the intervention of trustees capable of taking the legal estate, on the principle that *id certum est quod certum reddi potest.*

If it be admitted that authority is vested by the will in the trustees to ascertain and designate who are the poor children belonging to the congregation of *Saint Peter's Church*, it cannot, abstracted from the statute, assist the case of the defendants, for being a personal trust, without the aid of the statute, the *cestui que trust* can only be brought into being by the ascertainment and designation of the trustees; and there being no such *ascertainment* and *designation*, though certain *selections* have been made, no persons exist having in themselves a vested equitable interest which they are capable of asserting in a court of equity. The bequest therefore is too vague and indefinite to be carried into execution on general principles, there being none who can show themselves entitled to the beneficial interest, but is void, and the subject of the trust being undisposed of, the benefit of it results to the next of kin, as in the case of *Morrice vs. The Bishop of Durham,*

JUNE 1822.

Dashiell
vs
Attorney General

9 *Ves.* 399, where the devise was to the Bishop, in trust "to dispose of the ultimate residue to such objects of benevolence and liberality as he in his own discretion should most approve of," which being held not to be a charity, the bequest was determined to be void, and the residue decreed to the next of kin, on the ground that it was too indefinite to be executed by the court, which, as the master of the rolls said, "had not been and could not be denied." And if it were otherwise, the trustees, by neglecting to execute the trust, might virtually convert the trust into the ownership of the trust fund. If there was here a discretion vested in the trustees appointed by the testator, that case would precisely fit this, there being no legal distinction in this state between a bequest to charitable and other objects. But no such power is given; the trustees are directed to appropriate the fund entrusted to them, to the feeding, clothing and educating, the poor children belonging to the congregation, &c. that is, all the poor children belonging to that congregation, not such as they might select, and without any right or power to discriminate; and there is no difference whether a devise or bequest be immediate to an indefinite object, or to a trustee for the use and benefit of an indefinite object. If it be immediate to an indefinite object, it is void, and if it be a trust for an indefinite object, the property that is the subject of the trust, is not disposed of, and the trust results for the benefit of those to whom the law gives the property in the absence of any other disposition of it by the testator or donor; and independent of the statute of *Elizabeth*, no court in this state can by any mode carry such a devise or bequest into effect in violation of vested individual rights. It would be to make and not expound and enforce wills; an arbitrary exertion of judicial power altogether inconsistent with any principle known to the institutions of the state. And it is believed that in *England*, before the statute of *Elizabeth*, no charity could have been established on information in the name of the Attorney General; where the instrument creating it was defective, or the object of the donor's or testator's bounty was so vaguely and imperfectly described as to be incapable of taking if it was not a charity, and the thing intended to be given would vest in the heir at law or next of kin; but that whenever

charities were established on such informations, they were such as were valid in law, and the enforcement of which did not interfere with vested private rights. It is also, in this case, a fatal objection to the validity of the devise, that it is not for the benefit of those poor children alone, who at the time belonged to the congregation of *Saint Peter's Church,* but of the poor children who should in *succession* belong to that congregation, and who not being a corporate body were incapable of taking in succession. A devise or bequest immediately to an object incapable of taking, or in *trust* for such an object, standing on no better footing than if it were to a vague and indefinite object, and "The Trustees of *Saint Peter's Church,*" and "The Trustees of *Saint Peter's School,*" and "The Trustees of *Hillsborough School,* in *Caroline county,*" have clearly neither of them either a vested right in themselves, nor any beneficial interest in the trust.

June 1822.<br>Dashiell<br>vs<br>Attorney General

The next and principal question is, whether the statute 43 *Elizabeth* is in force in this state? which we think depends entirely on the construction to be given to the *third* section of the bill of rights, and the evidence furnished by Chancellor *Kilty's* Report of the Statutes. The *third* section of the bill of rights is in these words: "The inhabitants of *Maryland* are entitled to the common law of *England,* and the trial by jury, according to the course of that law, and to the benefit of such of the *English* statutes as existed at the time of their first emigration, and which by experience have been found applicable to their local and other circumstances, and of such others as have been since made in *England* or *Great Britain,* and have been introduced, used, and practised by the courts of law or equity." The provisions of this article vary according to the different subjects to which they relate.

The inhabitants of the state are declared to be entitled to the common law, without any restrictive words being used, and thus the common law is adopted in mass, so far at least as it is not inconsistent with the principles of that instrument, and the nature of our political institutions.

They are declared to be entitled to the benefit of such of the *English* statutes as existed at the time of their first emigration, and which, by *experience* had, at the time of the declaration of rights, *been found* to be applicable to their local and other circumstances, and also to the benefit

June 1822.

Dashiell
vs
Attorney General
of such other *British* statutes, made after the emigration, as had been introduced, used, and practised by the courts of law or equity—a distinction being made between the statutes which existed before the emigration, and those which were afterwards passed, and between both and the common law.   We do not think that this section of the bill of rights is to be expounded according to the rule of construction applicable to declaratory laws, but that it must be understood as adopting the different classes of the statutes to which it relates *sub modo* only, and rejecting all others; and as laying down rules by which to ascertain what statutes were so adopted—a different rule applying to each class.   In relation to those which existed at the time of the emigration, their having been found by experience to be applicable to our local and other circumstances, being the rule for the government of courts of justice in determining which are in force; and their having been introduced, used, and practised by the courts of law or equity, the rule in relation to those passed since the emigration. As to the latter class, it does not seem to be denied that none are in force but such as had, at the time of the declaration of rights, been introduced, used, and practised by the courts of law or equity; and if that rule was intended to be restrictive, it is difficult to ascribe to the convention a different intention in relation to the other, nor can a different intention be raised by the argument that our ancestors brought with them all the laws of the mother country at the time of their emigration. For if it had been intended that all the statutes, then existing, should be and continue in force, which *might* by courts be deemed applicable to our local and other circumstances, it was exceedingly idle to declare such of them to be in force as had by *experience* been *found* applicable. And why was a different language adopted in relation to them from that which was used in relation to the common law? for they were both equally brought with them by our ancestors.

The circumstance of a different provision being made shows that the convention entertained different views with respect to them.

It could not have been intended as a mere declaratory provision for the purpose only of removing doubts that existed at the time, for if there were any statutes about the extension of which no doubts were entertained, it must

have been those which, by experience, had been found applicable, and there was no necessity for declaring the inhabitants of the state to be entitled to their benefit, unless it was the intention to prohibit the use of all such as had not by experience been found applicable.

This view of the *third* section of the bill of rights raises the question, Which of the statutes existing at the time of the first emigration had by experience been found applicable? The only evidence to be found on that subject is furnished by *Kilty's* Report of the Statutes, in which the 43 of *Elizabeth* is classed among those which are said not to have been found applicable. That book was compiled, printed, and distributed, under the sanction of the state, for the use of its officers, and is a safe guide in exploring an otherwise very dubious path.

It is therefore our opinion, that the statute 43 *Elizabeth*, is not in force in this state, and that the decree ought to be reversed.

DECREE REVERSED.