JOHN NEEDLES, and others, *vs.* GEORGE MARTIN.
GEORGE MARTIN *vs.* JOHN NEEDLES, and others.

*Instructions accompanying a Will, part of the Will—*
*Trust void for Uncertainty and as a Perpetuity—*
*Limitations — Laches — Interest.*

A testator by his will, executed on the 5th of February, 1843, bequeathed
certain leasehold property and a small ground rent to his wife during
her life, and after her death to certain named persons, or to the sur-
vivors of them at the time of her death, and to their heirs and assigns.
He also bequeathed to them certain stock of the city of Baltimore,
together with all the rest and residue of his property.  Simultaneously
with the execution of his will, the testator executed another paper in
the form of a letter of instructions to the same persons, in which he
declared his intentions in respect of the property bequeathed to them
in his will—that it should be held in special trust, and the net revenue
and proceeds thereof, as fast as the same might accrue, be applied " *to
the education of free colored persons in the city of Baltimore.* "    The
paper also provided for filling any vacancy which might occur by the
death, disqualification or resignation of any of the trustees, in order to
carry into effect and perpetuate the intentions of the testator in rela-
tion to the education of free colored persons.   Both papers were depo-
sited with the Register of Wills for safe-keeping.   On the day follow-
ing the execution of his will the testator died; the will was admitted
to probate, and the other paper with the testimony taken in relation to
it, were ordered to be recorded.   The widow died in January, 1850,
when the trustees took possession of that part of the property in which
she had had a life estate.   In 1867, the leasehold property was sold by
the trustees and the proceeds invested in Baltimore City Stock.   On a
bill filed in September, 1869, by a nephew and next of kin of the tes-
tator to have the trust thus created declared void, it was HELD:

1st.  That the will and the letter of instructions executed at the same time,
were intended by the testator to be taken and to operate as one com-
plete and entire disposition of his property, and they together consti-
tuted his will.

2d.  That the trust declared by the testator for " *the education of free
colored persons in the city of Baltimore* " was void for uncertainty and
as creating a perpetuity.

3d.  That the claim of the complainant as next of kin, to the stock of the
city of Baltimore taken into possession by the trustees, was barred by
limitations.

39                    V. 33

4th. That as to the leasehold property in which the widow had a life estate, the claim of the complainant was not barred by limitations, he having filed his bill within twenty years after her death.

5th. That the complainant had not lost his right to the aid of a Court of Equity by his *laches*.

6th. That the complainant was entitled to interest only from the date of the filing of his bill, which gave notice to the trustees of his claim.

CROSS APPEALS from the Circuit Court of Baltimore City.

The causes were argued before BARTOL, C. J., BRENT, GRASON, MILLER and ALVEY, J.

*E. Otis Hinkley* and *Henry Stockbridge,* for Needles and others.

The will must stand by itself, and it is good. The very fact of executing the will and letter separately, shews the intent of the testator, that the will should stand at all events.

The mind of the testator was directed to the point of the possible invalidity of the trust, if inserted in the will, as originally intended by him, and the will was drawn separate from the letter, with the distinct purpose of making the will good in any event. There was nothing secret, the whole transaction was too plain and unequivocal as to the intent, to leave room for a doubt.

If a testator choose to make an absolute will, good in itself, entirely separate from an invalid trust which he desires to engraft on it, and purposely puts that invalid trust on another paper, no other construction can reasonably or justly be given to the act than that he intends to let the will stand if the trust be void. Why deprive the testator of testamentary power? The general rule is to let some will stand "*ut res magis valeat, quam pereat.*"

The trust contained in the letter is not void, either for *uncertainty* or for *perpetuity.*

There is no uncertainty as to who are *colored people.* The Acts of the Legislature are full of the expression. It has

Needles, *et al. vs.* Martin.

long been used to distinguish or point out with certainty a certain class of the population of this State. So too, *free,* as distinguished from a state of slavery, is a very certain definition of the persons; again, "*in the city of Baltimore*" still ascertains the objects of the charity. Under these, every individual intended to be benefitted could be distinctly ascertained.

As to perpetuity, the property is not put *extra commercium,* on the contrary it is intended to be sold, and the two houses actually were sold in 1867. Trusts are not necessarily perpetuities, because they may continue a long time, unless the trustees are restrained from selling.

The Statute of Limitations does apply.

The exception of *express* trusts from the operation of the Statute is grounded on the presumption that the trustee holds under that express trust, for the benefit of the *cestui que trust,* and not *adversely* to him. This is a presumption only arising from express tenure. It may be compared to the tenure of a tenant under his landlord. But the reason of this rule ceases and so does the rule itself, in case of mere implied trusts, for the trustee then does not know his *cestui que trust.* In the present case it is clear that the trustees never did hold for the complainant under the implied trust, until the Court so declared. The trustees before that held adversely to the complainant under the express trust for others. *White vs. White,* 1 *Md. Ch. Dec.,* 53; *McDowell vs. Goldsmith,* 2 *Md. Ch. Dec.,* 370; *Hertle vs. McDonald,* 2 *Md. Ch. Dec.,* 128; *Young vs. Mackall,* 3 *Md. Ch. Dec.,* 398; *Young vs. Mackall,* 4 *Md. Ch. Dec.,* 362; *McDowell vs. Goldsmith,* 6 *Md.,* 319; *Kane vs. Bloodgood,* 7 *Johns., Ch. Rep.,* 90; *Angell on Limitations, sec.* 174, *e. s.; Piatt vs. Vattiar,* 9 *Pet.,* 415; *McKnight vs. Taylor,* 1 *How.,* 167; *Elmendorf vs. Taylor,* 10 *Wheaton,* 171; *Boone vs. Chiles,* 10 *Pet.,* 177.

And even in cases of express trust, if the trustee denies the right of his *cestui que trust,* limitations apply. *Murdock vs. Hughes,* 7 *Smedes & Marshall,* 219.

Now if limitations apply as to the city stock delivered to Needles in 1844, that part of the case is clear, for the limitations run from that day.

As to the leasehold estate delivered to the widow for life in 1844, her possession must be considered that of the remainder man, and limitations then commenced to run.

*Laches* as an equitable defence, plainly applies here.

For the complainant stood by for twenty-six years and did nothing, although he knew of the testator's death, and was then of full age and has lived in Baltimore ever since. The will and letter were both on record, and all the testimony, in fact the complainant's whole case, was open to him, and the evidence shews he was not, in fact, ignorant of his rights. He has slept on them too long. 1 *Story's Equity Juris.*, 529; 2 *Story's Equity Juris.*, 1520 *and* 1520, *a*, and cases there cited.

*John Scott, Jr.*, and *Spottswood Garland*, for George Martin.

The letter addressed to the trustees selected by the testator is a part of his will, and as such, has been duly admitted to probate by the Orphans' Court of Baltimore city. The order of the Court as to wills of personal property is conclusive. *Colvin vs. Warford*, 14 *Md.*, 550, &c.

If the order of the Orphans' Court directing the letter to be recorded be not a probate of the will, yet a Court of Equity will declare in this case that it is a validly executed testamentary paper, *certainly for the purpose of raising a trust.* The .evidence shows, that a testamentary declaration of trust has been executed in conformity with all the requirements of the Statute of Frauds. It could have been probated but was not.

A Court of Equity will not allow parties to take possession of property not their own, when the evidence shows, beyond doubt, the testator never intended it for their use, because they did not have the instrument proved as a will in the proper tribunal. *Smith vs. Attersoll*, 1 *Russell, Ch. Ca.*, 273,

Needles, *et al. vs.* Martin.

275; *Earl of Inchiquin vs. French,* 1 *Cox,* 30, 31, 32; *Metham vs. Duke of Devon,* 1 *P. Wms.,* 529, *and note* 1; *Jones vs. Nabb, Gilbert's Eq. Repts.,* 146; *Crook vs. Brooking,* 2 *Vernon,* 50, 106.

The property was bequeathed, and accepted on the understanding, that it was to be applied in the manner prescribed in the letter of instructions. In that case it would be simple fraud for the defendants to retain the property, to prevent which the Court will raise a trust. *Barrow vs. Greenough,* 3 *Ves.,* 154; *Strickland vs. Aldridge,* 9 *Ves.,* 516; *Smith vs. Attersoll,* 1 *Russell, Ch. Ca.,* 271; *Muckleston vs. Brown,* 6 *Ves.,* 52; *Jones vs. McKee,* 3 *Penn. St. Repts.,* 496; *Hoge vs. Hoge,* 1 *Watts,* 213; *Gaither vs. Gaither,* 1 *Md. Ch. Dec.,* 158.

The trust being raised, the Court will declare it void for uncertainty, indefiniteness, and as tending to produce a perpetuity. *Warren vs. Meth. E. Church,* 28 *Md.,* 338; *Wildeman vs. Mayor, &c., of Balto.,* 8 *Md.,* 551; *Dashiell vs. Attorney Gen'l,* 5 *H. & J.,* 392; *Same vs. Same,* 6 *H. & J.,* 1.

The leasehold property came into the hands of the defendants on the death of Wells' widow, in 1850, nineteen years prior to the institution of this suit, and, as to such property, equity adopts by analogy the same Statute of Limitations as may be pleaded in the Courts of Law as a defense to an action of *ejectment.* In that case, less than twenty years is no bar, and it cannot be maintained that a right of action would be lost in a shorter time in equity than at law, when the doctrine of limitations has been introduced into the former Courts solely for the purpose of giving the same remedy as in Courts of Law. *Dugan vs. Gittings,* 3 *Gill,* 161; *Crawford vs. Severson,* 5 *Gill,* 443; *Greenwood vs. Greenwood,* 5 *Md.,* 336.

The case of *Dugan vs. Gittings,* 3 *Gill,* 161, is an express authority, that, in equity, an account of the rents and profits during the whole period of the holding of the property, provided it be less than twenty years, is incident to a decree for leasehold property, or the value thereof.

But in this case, the whole fund was held under a direct, continuing trust, expressly raised to continue and subsist in the legatees. And that limitations do not apply to express trusts cognizable only in equity, and not at law, has been repeatedly settled by our Courts. *Dugan vs. Gittings*, 3 *Gill*, 164; *White vs. White*, 1 *Md. Ch. Dec.*, 56; *Young vs. Mackall*, 4 *Md.*, 374, 375; *Bowie vs. Stonestreet*, 6 *Md.*, 431; *Hanson vs. Worthington*, 12 *Md.*, 441.

To the extent of a decree for the fund, the decision of the Court below extended. But the decision was erroneous in not allowing interest. Interest, in the way of rents and profits on the leasehold property, is given expressly by the decision of this Court in the leading case of *Dugan vs. Gittings*, 3 *Gill*, 164.

GRASON, J., delivered the opinion of the Court.

This record contains cross appeals from a decree of the Circuit Court of Baltimore City, and discloses the following facts: Nelson Wells executed his last will, in due form of law, on the fifth day of February, in the year 1843, by which he bequeathed to his wife absolutely all his household furniture, and certain leasehold property, and a sub-ground rent of thirty-five dollars for her life, and after her death to John Needles, Isaac Tyson, Jr., and Edward Jessop, or to the survivors of them at the time of the death of his wife, and to their heirs and assigns. He also bequeathed to them his Baltimore City stock, amounting to thirty-five hundred dollars, together with all the rest and residue of his property. Simultaneously with the execution of his will he executed another paper, in the form of a letter of instructions to Needles, Tyson and Jessop, which was attested by the same persons who were witnesses to his will. By this paper the testator declared his intentions and wishes, with reference to the property bequeathed to them by his will, in the following language: "Being in my last moments desirous to make some provisions for the school education of free colored chil-

dren, and reposing full and entire confidence in you, I have, by my last will and testament, this day executed, bequeathed and devised to you, as a special, confidential trust, the stock I hold of the City corporation of Baltimore, say about three thousand five hundred dollars, bearing six per cent. interest. And further, by the same will and testament I have bequeathed to you, to take effect on the death of my wife Mary, all the residue of my estate. Now it is my desire and will that you will hold the same in trust, invested in such manner and in such security as you may deem most safe and advantageous, and that the net income and proceeds thereof, as fast as the same may accrue, be applied by you to the education of free colored persons in the city of Baltimore." The paper then provides for filling any vacancy which may occur by the death, disqualification or resignation of any of the trustees, by appointment by the survivors, of some judicious friend, in whom full faith and confidence can be placed, for the purpose of carrying into effect and perpetuating his intentions in relation to the education of free colored persons.

The proof in the cause shows that the testator, several days before his death, sent for Needles and Tyson, informed them of his intention to make a will providing for the education of free colored persons in Baltimore, and requested them and Dr. Handy to have a suitable will prepared in accordance with his views, which were that all his property should be appropriated to that purpose, the one-half at once, and the other after the death of his wife. It is also proved that, having been advised that there would be some difficulty in carrying into effect such a trust, they had the will and paper in question prepared and read them to him, and that, although the testator did not at first approve of this mode of effecting his object, he eventually, after considering upon it, agreed to execute the papers and did execute them in the presence of three witnesses, who attested both papers. They were then put into one envelope, upon which was indorsed the fact that it was Nelson Wells' will, and were deposited with the Regis-

ter of Wills for safe keeping. The next day the testator died, and the will and the other paper were afterwards proved in the Orphans' Court, the will was duly admitted to probate and the other papers, with the testimony taken in relation to it were ordered to be recorded, to have such effect as might thereafter be determined to be legal and proper. Letters testamentary were granted to John Needles, the executor named in the will, who settled the estate and handed over to the legatees, in 1844, the property devised to them respectively. The widow died about the 20th of January, 1850, when the above named parties took possession of that part of the property in which she had taken a life estate. Isaac Tyson, Jr., died and James Baynes was appointed to fill the vacancy in the number of trustees caused by his death. In 1867 the leasehold property was sold by the trustees, and the proceeds, amounting to three thousand dollars, were invested in Baltimore city stock. It appears the whole income of the property has been expended by them in the accomplishment, as far as that was practicable, of the intentions and wishes of the testator. The bill was filed by George Martin, nephew and next of kin of the testator, in September, 1869, for the purpose of having the trust thus created declared void.

The appellants filed their answers, claiming the property as their own, though admitting that they consider themselves as morally trustees, and relying upon the Statute of Limitations, and the negligence and *laches* of the appellee as a bar to his claim to relief in the premises.

Proof was taken, and, upon final hearing, the Court below passed a decree in favor of the appellee for the whole property, with interest from the time of the filing of the bill. From this decree, both parties appealed.

In the argument of the cause in this Court, it was claimed by the appellants that the decree ought to be reversed upon four grounds—first, because the paper, executed at the same time the will was, formed no part of the will itself, and was not a codicil to it, and that they were, therefore, entitled to

the property in their own right, and not as trustees; second, because, even if it be taken as part of the will, the trust thereby created is not void either for uncertainty or as a perpetuity; third, because the right of George Martin to recover is barred by limitations; and fourth, because he has lost his right to the aid of a Court of Equity in consequence of his long neglect and *laches.*

1st. It is clear, beyond all question, that the testator never intended to give his property to the appellants for their own use and benefit, but that it was his well settled purpose and intention to give it to them as trustees only, to hold, invest and manage the same, and to apply its proceeds to the education of free colored persons in Baltimore city, and it is proved that he stated that, if there was a corporation of such persons, he would leave it directly to such corporation. In order to carry into effect his intention, after taking advice, two of the appellants had prepared the will and accompanying paper, both of which were executed at the same time and with all the formalities which the law requires to give validity to wills. They were intended to be taken and to operate together as one complete and entire disposition of his property, and, from the proof in the cause, we think it very evident that he never would have executed the one without the other. In this instrument is declared the trust upon which the legatees are to hold the property bequeathed by the will, and in it is employed the same formal language that is used in the will itself; such as, "it is my desire and will;" and we think there can be no doubt that the testator considered it a most essential and important part of his will, and executed it as such. The Orphans' Court did right in admitting it to probate and having it recorded with the will. It is executed with all the formality requisite to make it a valid declaration of the trust upon which the legatees were to take and hold the property bequeathed to them by the will. *Earl of Inchiquin vs. French,* 1 *Cox's Chan. Ca.,* 41, 42; *Metham vs. Duke of Devonshire,* 1 *Peere Williams,* 529, *note* 1. In

this case the property was bequeathed by the testator and accepted by the legatees, upon the express understanding and agreement between them, that it should be applied in the manner and to the object prescribed in the letter of instructions, and, under such circumstances, a Court of Equity will interpose to prevent them from appropriating the property to themselves, and to compel the execution of the trust, if the trust can be legally sustained. *Strickland vs. Aldridge,* 9 *Ves.,* 516; *Barrow vs. Greenough,* 3 *Ves.,* 154; *Smith vs. Attersoll,* 1 *Russell's Chan. Ca.,* 271; *Muckleston vs. Brown,* 6 *Ves.,* 52; *Jones vs. McKee,* 3 *Penn. St. Rep.,* 496; *Hoge vs. Hoge,* 1 *Watts,* 213; *Gaither vs. Gaither,* 3 *Md. Chan. Dec.,* 158; *Cholmondeley vs. Clinton,* 2 *Jac. & Walk.,* 147, 148.

2d. Is the trust in this case void for uncertainty or as a perpetuity? It has been decided by this Court that a devise to the "trustees of Hillsborough school to be by them applied towards feeding, clothing and educating the poor children of Caroline county, which attend the poor or charity school established at Hillsborough, in said county," was void as well on account of the uncertainty of persons, who were the objects of the testator's bounty, as because a perpetuity was created, "the poor children," &c., not being a body corporate and not able to take in succession. *Dashiell, et al. vs. Attorney General,* 5 *H. & J.,* 392; *Same vs. Same,* 6 *H. & J.,* 1. In the case of *Wildeman vs. The Mayor and City Council of Baltimore,* 8 *Md.,* 551, it was again decided that a devise to the city of Baltimore, in trust, "for the relief and support of indigent and necessitous poor persons, who may, from time to time, reside within the limits, as now known, of the twelfth ward of said city," was void as being too vague and indefinite. See also *Trippe vs. Frazier, et al.,* 4 *H. & J.,* 446. The trust in favor of "free colored persons in Baltimore city" is too vague and indefinite to be enforced, and is void for that reason as well as because it is a perpetuity, and, by operation of law, a trust results in favor of the next of kin of the testator, unless his claim thereto is barred by the

Statute of Limitations or is lost by his own negligence and *laches*.

3d and 4th. As a general rule, the Statute of Limitations will not apply to cases of express and continuing trusts, for the very obvious reason that, as the title of the trustee is the title of the *cestui que trust*, his holding and possession will not be presumed to be hostile and adverse, and the trust being a subsisting, continuing one, no lapse of time will bar. But this rule is subject to limitations and restrictions, and whenever a trustee sets up an open, public, adverse claim against his *cestui que trust*, and denies that the trust any longer subsists, or where a trustee recognizes another person as *cestui que trust*, long possession and continued enjoyment of the property under such recognition will be a bar in equity. *Angell on Limitations*, 171, 172; *Robinson vs. Hook*, 4 *Mason's Cir. Co. Reps.*, 152; *Farnum vs. Brooks*, 9 *Pick.*, 212; *Kane vs. Bloodgood*, 7 *Johns. Chan. Rep.*, 123, 124. In the case now before us, the appellants never did recognize the appellee as their *cestui que trust*, but took possession of part of the property about twenty-four years before the filing of the bill, and have held that portion of it ever since, and applied the income thereof for the benefit of other parties. So far from having recognized him as their *cestui que trust*, or admitted that he had any interest in the property they held under the will, one of them informed him, shortly after the testator's death, that he was entitled to nothing under the will. During all this time, he has lived in Baltimore where the appellants resided and held the property, and in the Orphans' Court of which city the will and declaration of trust were recorded and open to his inspection. After such a lapse of time, during which it is not even alleged that he was under any disability, his right to relief, so far as the city stock taken into possession by the appellants is concerned, is clearly barred by the Statute of Limitations.

The statute did not begin to run against the appellee's claim to that part of the property in which the widow took

a life-estate, until her death, which occurred 20th January, 1850. This consisted of leasehold, and his right of recovery would not be barred by less than twenty years' adverse possession. The bill was filed less than nineteen years after the death of the widow, and, therefore, the plea of limitations, as to this part of the property, cannot prevail. .

Although Courts of Equity will sometimes refuse to grant relief, where a party has been guilty of gross negligence and *laches* for even less than twenty years, yet we can see nothing in the circumstances of this case to justify the application of so rigid a rule to the appellee. The decree of the Court below will be affirmed in part and reversed in part, and the cause remanded in order that a decree may be passed in conformity with this opinion.

The only question presented upon the appeal of George Martin is, whether the Court below erred in allowing him interest from the time his bill was filed, instead of from the date of the settlement of the testator's estate by the executor. It appears that the trustees have managed the estate without any view to benefit themselves, and without charging or receiving any commissions or remuneration for their services; and as the appellant has slept upon his rights for more than eighteen years, and during all that time, suffered the appellees to go on expending the income and profits from the property without claim or protest made by him, it would be neither equitable nor just to compel them to pay interest beyond the period at which they had notice of his claim, to wit, the date of the filing of the bill of complaint.

The decree of the Court below, upon this appeal, must be affirmed.

*Decree affirmed in part and reversed in part, and cause remanded.*

(Decided 3d February, 1871.)