# CIRCUIT COURT OF BALTIMORE CITY.

Filed April 19, 1916.

FERDINAND C. LATROBE, ET AL.,
VS.
AMERICAN COLONIZATION SOCIETY.

IN RE: AMENDED PETITION OF ROBERT SOULSBY, ET AL.

*Leigh Bonsal* and *Richard S. Culbreth* (for heirs of Caroline Donovan, petitioners).

*D. K. Este Fisher* and *William G. Johnson,* of Washington (for American Colonization Society).

*Eugene O'Dunne* and *Charles F. Stein* (for trustee).

## DAWKINS, J.—

The very full oral discussions and the very elaborate briefs have taken a wider range perhaps than would have seemed necessary to enable a proper disposition of the demurrer here to be decided. A careful examination of the arguments submitted and the numerous cases cited have been most helpful and illuminating. Even though it might not be needful to discuss all of the matters argued before the Court, yet it might be advisable for the further conduct of the case to indicate the views now held upon the several propositions submitted.

There can be little doubt but that a bill should not be dismissed, if by any reasonable construction of the language of its averments a case is stated entitling the plaintiff to the relief sought.

102 Md. 222, Shipley vs. Fink.

Nor can there be a serious question as to the right of the petitioners to intervene as heirs at law and to come into this case over which this Court has assumed jurisdiction and is technically, at least, now administering and to have the court pass upon any question concerning the trust and its administration, especially when it involves the title to land. Conceding this right, a consideration of the petition shows that the petitioners contend that the trust declaration made by Mrs. Caroline Donovan in the deed dated June 21, 1886, to Ferdinand C. Latrobe and James W. Harvey, Jr., trustees, to pay over after the termination of the grantors' life estate

"To the American Colonization Society * * * under the supervision of a court of equity for the transportation annually to Liberia of such colored persons as may desire to emigrate to that country, the said trustees * * * to have the power, should the interest of the trust so require by and with the approbation and consent of a court of equity first had and obtained, to sell and dispose of the said property or any portion thereof, from time to time for reinvestment with the appro-

bation of the Court of such reinvestment for the purposes that are herein expressed and declared. And if in any year the transportation of colored persons for that year should not require the net income of the said property for the same year, such income or any balance remaining shall be appropriated by the said society to the maintenance of public schools for the education of colored children in Liberia"

is void, because it offends against the rule against perpetuities—and it is void even if it does not so offend, because the trust attempted to be created by said deed has now ceased and determined and is at an end. The claim is made that the trust is vague, uncertain and indefinite and that the former purpose named in the deed is incapable of performance, because there are no longer any colored persons who wish to be transported to Liberia, which was the purpose for which the said society was brought into existence and that it is not within the corporate powers or purposes of said society to receive money for the other or latter object named in said deed, to wit:

"To the maintenance of public schools for the education of colored children in Liberia."

The claim being made that the maintenance of such schools is in no way connected with the colonization in Africa of the free people of color residing in the United States, since the education of colored children would necessarily be of those born in Liberia. For these reasons the objects and purposes of the trust can no longer be accomplished and the operations of the society must practically be at an end. The trust being void ab initio or at an end if not originally void, the heirs at law claim the property and an accounting of income. The trustees and cestui que trusts in support of their demurrer to the bill or petition of the claimants contend that if the deed is void the Court cannot in this proceeding grant the relief sought.

They say that if the petitioners seek possession of the property they should pursue their remedy at law which is an adequate one.

They further claim that the grant does not offend against the rule of

perpetuities and that the transportation of colored people to Liberia has not ceased and that the provision for maintenance of public schools in Liberia is not without the corporate powers of the society, so that the trust has not come to an end and that adverse possession, limitations and laches are absolute bars to recovery by the petitioners.

The questions that should determine the matters now before us, assuming that all questions of fact alleged in the petition are admitted for the purposes of the demurrer, is, have the petitioners presented a case that by any reasonable construction is such a one as a court of equity can grant relief. It is somewhat difficult to clearly determine what does—violate—the rule against perpetuities so far as it is fixed in this State. Without commenting on the many cases cited the law seems clear and based on good reason as laid down in Gambrill vs. Gambrill, 122 Md. 563, viz: That the object of the rule is to prevent limitations of estates for future vesting upon contingencies which are not certain to happen within the period of a life or lives in being, when the instrument making the disposition takes effect and 21 years beyond, with the allowance of time for the possible birth of a posthumous child.

In the case of Novak, 123 Md. 161, the gift was to a non-existent body and the will provided that the property given should not be sold.

In the case before us there is nothing to place the property extra commercium, but the deed confers the power of sale on the trustees at all times.

The trustees and the beneficiaries having submitted themselves to the jurisdiction of the Court, the property can be handled in any proper way at any time. The beneficial interest commences at the expiration of a life in being, that, is, at the death of Mrs. Donovan. I am forced to conclude that this declaration of trust in this deed does not offend against the rule against perpetuities.

The American Colonization Society has the power under its charter

"To take and receive any sum or sums of money, goods, or chattels that shall be given, sold, or bequeathed to them in any manner whatsoever to occupy, use and enjoy, or sell, transfer or otherwise dispose of according to the by-laws and ordinances regulating the same, now or hereafter, to be prescribed, all such lands * * * money * * * *as they shall determine to be most conducive* to the colonization. with their own consent in Africa of the free people of color residing in the United States."

It would not seem that this Court would have to determine whether the society had a right to use the money for establishing schools—if there were no violence done in carrying out the purpose of the grantor in this deed—but if it were necessary to determine this it would seem clear that the society under its powers to do what it deemed most conducive for carrying out the main purpose for which it existed. viz: The colonization of negroes in Africa, that it would have a right to receive property for this purpose and to use it for the same and of the establishment of schools is entirely within the scope of colonization, provided in the charter of the society, and the grantor had a right to give her property for that purpose.

The remaining theory upon which the bill can be maintained is one largely of fact. Having already reached the conclusion as indicated, that the deed is valid and that the petitioners have a right to come in this case to have the Court pass upon any questions having to do with the trust and having reached the conclusion that the bill herein is not bad for multifariousness (because of its alternative reasons for relief) and now declaring that in the opinion of the Court an action of ejectment or a proceeding at law would not lie because the title does not rest in the trustees, save as officers of the Court—it remains to consider the allegations that the trust has come to an end, since its objects and purposes can no longer be accomplished for the reasons set forth that free negroes no longer desire to go to Africa, that such as can be gotten—to go are not of a desirable kind—and as a fact no negroes are being sent so that so far as the society is concerned, it can no longer carry out the purposes of the trust. This would entitle the petitioners to relief sought, unless it can be shown that any right to recovery has been lost by uncertainty, limitations, laches or adverse

possession. The illuminating collection of cases cited by counsel for petitioners on uncertainty of objects, etc., such as the Warren case, 28 Md. 338; Dashiell vs. Atty. Gen., 5 H. & J. 399, do not just meet our situation in this case. Rather would I say with the Court in Barnum vs. Baltimore, 62 Md. 294:

"Where the trust reposed in the corporation is for a charity within the scope of its duties a court of chancery will prevent the misapplication of the trust funds and compel the execution of the trust."

The law seems to be clear that when property is left to a corporation for such uses as are within the scope of its corporate purposes or the objects of the gift are such as the corporation was organized for, then such gift cannot be declared invalid on the ground that it was in trust for indefinite objects.

Baltimore vs. Church Home, 110 Md. 270; Snowden vs. Crown Cork & Seal, 114 Md. 650.

If there be a failure of the objects, or a dead trust with an absolute cessation of living functions and a termination of operations, or if there be an impossibility of performance or the necessity for the purposes for which it was created have ceased to exist, then the property would revert to Mrs. Donovan's heirs at law.

The right of a court of equity to terminate such a trust is undoubted, unless the claim is barred by the Statute of Limitations, or is lost by laches or neglect to assert his claim,—or adverse possession.

Thorne vs. Thorne, 125 Md. 126; Needles vs. Martin, 33 Md. 609; Orrick vs. Boehm, 49 Md. 72; In re. Stone, 138 Mass. 476.

Limitations cannot defeat this claim if the facts which are admitted for the sake of the demurrer be proven.

The trustees have submitted themselves to the jurisdiction of the court of equity. They are therefore before that court. The trustees have, with the society, asked the Court to take charge of the estate. The trustees only took possession, save as officers of the Court, not as owners. The Court is in possession. The Court can remove the trustees from office or deal with them and the property as the exigencies of the case may require. The trustees have no right, technically, to do anything in administering the corpus, without the Court's sanction. They are bound to obey any order of the Court, so far as the conduct and administration of the property belonging to the estate.

Abell vs. Abell, 75 Md. 44.

The trustees' possession is exclusively the possession of the Court. The property is held by the Court for the benefit of anyone who may be entitled to it. It does not belong to the trustees. The petitioners say they were not aware of the making of the deed. Whether that be true or not the condition set up, if existing, is only alleged to have arisen at a comparatively recent time. This condition is not alleged to have existed at the time of making of the deed. I cannot feel that adverse possession is any answer to this phase of the bill. This, in effect, too, disposes of the question of laches and limitations. A void holding may be validated by adverse possession, but not so if a condition such as is alleged in the bill exists.

Day vs. Postal Telegraph Co., 66 Md. 359.

The cases of Regents vs. Calvary Church, 104 Md. 635, and Miller vs. Zion Chappel, 119 Md. 510, referred to as showing how adverse posession may be availed of, present a situation very different from the one we have before us. It will serve no good purpose to comment upon them.

The petitioners claim that they knew nothing of the execution of the recording of the deed declaring the trust or of any of the facts in regard thereto. That the deed is not referred to in Mrs. Donovan's will; that one of the heirs was a lunatic until her death in 1903; that no notice of any kind was given through the papers or otherwise of the declaration of said trust, and that it has only been during the past six months (prior to the filing of the petition) that they have known that there were no longer free negroes in the United States who desired to be aided by the society and transported to Liberia; that they knew nothing of the corporate powers of the American Colonization Society until the petition was filed and that no one has been hurt by the delay. If these facts can

be established, the defense of laches would not avail.

Long lapse of time in asserting rights if unexplained may be sufficient to induce a court of equity to hesitate to interfere in a case (as has been argued by one of the counsel for the defendant as existing here) in which practically all of the parties who knew about the transaction are dead, but acquiescence always presupposes that the party affected understood the act done and was apprised of his legal right to question or attack.

75 Md., Whitridge vs. Whitridge.

For the reasons given the demurrer will be overruled, with leave to answer in thirty days.