FRANK BARNUM, ARTHUR C. BARNUM, ANNIE BAR-
NUM, MARGARET B. WILSON, and AUGUSTUS WIL-
SON *vs.* THE MAYOR AND CITY COUNCIL OF BAL-
TIMORE, and SAMUEL H. TAGART, Executor and
Trustee.

*Construction of a Will—Equitable estate—Devise not against
Public policy—Right of Testator to attach a Condition to the
Enjoyment of his Bounty—Devise or bequest to the City of Bal-
timore in Trust, for Educational and Charitable purposes—
Certainty in the Objects and Purposes and Beneficiaries of a
Trust—McDonogh Institute—Jurisdiction of a Court of
Equity over property held in Trust by a Municipal Corpora-
tion.*

A testator, who died on the 23rd of March, 1882, after declaring cer-
tain uses as to a small portion of his estate, devised and bequeathed
in trust as to all the rest and residue of his estate, to appropriate
and apply the net income thereof as follows: "If, within twelve
months after my decease, my brother, F. B., shall withdraw from
the priesthood in the Roman Catholic Church, (should he be at the
time of my death a priest in said church,) and from any and every
order or society connected with said church, of which he may be
a member, and until he shall become a priest or deacon in said
church, or shall connect himself with some order or society of said
church, or until the income of said property, or some part thereof,
shall be sought to be subjected to the payment of his debts or lia-
bilities by legal process, I direct that the net income of said rest
and residue of my estate, be paid to the said F. B. in every year, in
such instalments as the said trustee, or his successor or successors,
may deem best, for and during the term of the natural life of the
said F. B," At the time of the testator's death, his brother, F. B.,
was not a priest or deacon in, nor a member of, or connected
with, any order or society of the Roman Catholic Church; but on
the 31st of July, 1882, he became a member of, and connected him-
self with, an order or society of that church, and has remained so
connected ever since. He was unmarried and without issue at the
time of the death of the testator, and has so remained. On a bill
filed to obtain a construction of the will, it was HELD:

1st. That F. B. took an equitable estate under the will, and became entitled to the income thereof, from the death of the testator, to the time of his becoming a member of the order or society connected with the Roman Catholic Church.

2nd. That it was not against public policy to make the devise or bequest dependent upon the condition that F. B. should withdraw from the priesthood, or membership of any order or society connected with such church, or refrain from forming any such connection; and the testator had the right to make the enjoyment of his bounty dependent upon the condition attached to it.

Under its charter, the City of Baltimore has the power to accept and hold in trust, any property for educational and charitable purposes.

On the occurrence of an event, which actually took place, a testator devised and bequeathed the rest and residue of his estate to the Mayor and City Council of Baltimore, in trust, for the McDonogh Educational Fund and Institute, to be applied to establishing a chair therein, to be called the "Zenus Barnum Chair," to promulgate such course of instruction in said Institute, as would aid in the practical application of the mechanical arts. He then declared that the property so given, should be held under the same control and direction as the estate and property now held by said Fund and Institute, and to be so appropriated and applied as to give boys in that institution such useful and practical mechanical education, as would enable them to gain a livelihood by skilful manual labor. There never had been such an incorporated body as the "McDonogh Educational Fund and Institute," but there had been for many years, and still existed, a municipal organization or agency, constituted by ordinance of the city, under the name and style of the "Board of Trustees of the McDonogh Educational Fund and Institute," for the administration of the educational fund devised under the will of McDonogh. The funds derived from McDonogh's estate, had been devoted exclusively to the purchase, the establishment, and the maintenance of the "School Farm," authorized and directed to be maintained by the will. This farm, with its organized school thereon, with its teachers and pupils, was known as the "McDonogh Institute," and was under the exclusive management and control of the "Board of Trustees of the McDonogh Educational Fund and Institute." HELD:

1st. That the testator clearly intended that the estate given should be managed and controlled by the "Board of Trustees of the McDonogh Educational Fund and Institute," and should be applied

by that municipal agency, in the manner designated in the will, in connection with, and as part of, the "McDonogh Institute."

2nd. That there was no uncertainty, and there could be no difficulty, in the application of the fund to the purpose and object designated by the testator.

3rd. That the objects and purposes, and the beneficiaries of the trust, were sufficiently certain and defined to render the trust valid, and to enable a Court of equity, by virtue of its inherent jurisdiction and power over trusts, to enforce the trust, in accordance with the plan and intent of the testator.

Where property is held by a municipal corporation in trust, or where the trust reposed in the corporation is for a charity within the scope of its duties, a Court of Chancery will prevent the misapplication of the trust funds, and compel the execution of the trust. And this jurisdiction is not founded upon the Statute of 43 Elizabeth, ch. 4, but is a part of the original inherent jurisdiction of the Court of Chancery over the subject of trusts.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, ROBINSON, RITCHIE, and BRYAN, J.

*Thomas A. Whelan*, and *John H. Thomas*, for the appellants.

The devise of the testator to the Mayor and City Council of Baltimore, in trust, for the McDonogh Educational Fund and Institute, is void, because there is no such corporation as that named as the *cestui que trust. Church Extension, &c., vs. Smith*, 56 *Md.*, 365-6-7, 396-7-8; *State vs. Warren,* 28 *Md.*, 352-4-5.

This difficulty could not have been removed, even by showing that there was a corporation with a similar name, without proof that *some corporation* was intended to be the beneficiary. *Domestic and Foreign Missionary Society vs. Reynolds*, 9 *Md.*, 341; *Brown, Adm'r, et al. vs. Thompkins, et al.*, 49 *Md.*, 431.

Still less can it be removed by showing that there was an *unincorporated body*, administering two trusts, a fund and an institute, and claiming that the institute, supported by that fund, was the intended beneficiary.

The admissions in reference to the McDonogh will and the city ordinances do not, therefore, help to identify the *cestui que trust*, or to give validity to the trust.

It is clear, that by the laws of this State, by which alone the validity of Barnum's will is to be tested, if the trusts are too indefinite to be enforced by a Court of equity, the *devise is void, and the property goes to the heirs-at-law and next of kin of the testator.* *Dashiell vs. Attorney-General*, 5 *H. & J.*, 399; *Church Extension vs. Smith*, 56 *Md.*, 399; *Wilderman vs. Mayor and City Council, &c.*, 8 *Md.*, 555-6; *Needles vs. Martin*, 33 *Md.*, 608.

A reference to the cases last quoted, and others in this Court, will show, that by an unbroken line of decisions, this Court has held devises in trust to have been void, for vagueness in the designation of the intended trust, or in that of the beneficiaries intended, when those designations were much more definite than in Barnum's will, as for instance : "The poor children belonging to the congregation of St. Peter's Protestant Episcopal Church, in Baltimore City." *Dashiell vs. The Attorney-General*, 5 *H. & J.*, 392-8-9. "For the relief and support of the indigent and necessitous poor persons who may from time to time reside within the limits, as now known, of the Twelfth Ward of said city." *Wilderman vs. Mayor, &c.*, 8 *Md.*, 551-56. "The education of free colored persons in the City of Baltimore." *Needles vs. Martin*, 33 *Md.*, 609-14-15-17-18. "To the Trustees of the Mary Hoye School House, in Cumberland, for educational purposes, and to the African Missionary Society, for the purpose of converting and Christianizing the African race." *Rizer vs. Perry*, 58 *Md.*, 113-15-34. "Necessitous churches of the Protestant Episcopal Church." *Church Extension vs. Smith*, 56 *Md.*,

396-7. See also—*The Domestic and Foreign Missionary Society vs. Reynolds,* 9 *Md.,* 340 ; *Meade vs. Beale, Taney's Decisions,* 339 ; *Wheeler vs. Smith,* 9 *Howard,* 76 ; *Kain vs. Gibboney,* 101 *U. S.,* 362.

It is clear, in this case, that there are no intended beneficiaries who can apply for the execution of the trust, in case of its mal-administration. "The McDonogh Educational Fund and Institute" cannot; the trustees of that fund and institute cannot, because there is no such corporation. If the city misappropriate or mal-administer it, the trustees would be impotent. The city, unfettered by the provisions of McDonogh's will, or by those in its own ordinances, has made and unmade trustees, in its discretion. It would brook from them no thwarting of its purpose. The tax-payer could not complain. The perversion of the fund to general corporate purposes would lessen, not increase his burden; would benefit, not injure him. The heirs-at-law and next of kin of Barnum could not complain. The establishment of the will deprives them of any interest, entitling them to be heard.

If, then, this devise be upheld, it gives to the Mayor and City Council of Baltimore "an uncontrollable power of disposition or application" of the property in question, which this Court has said would be "virtual ownership, and not trust."

It can hardly be apprehended that this Court will ever award to a trustee, for his own purposes, the absolute ownership of property which was devised to him in trust for another.

As this Court has said in another case, "it is clear, beyond all question, that the testator never intended to give his property to the appellants," (in this case to the Mayor and City Council of Baltimore,) "for their own use and benefit, but it was his well-settled intention to give it to them as trustees only. Under such circumstances, a Court of equity will interpose to prevent them from appropria-

ting the property to themselves, and compel the execution of the trust, if the trust can be sustained." *Needles vs. Martin,* 33 *Md.,* 617-18.

In all cases in which the Court has found that it could not compel the execution of the trust, by reason of vagueness in the description of the beneficiary, it has declared the devise to the trustee to be void.

A reference to the will of McDonogh will show that he preserved, throughout, a distinction between the "educational fund" to be derived under the will, and the "Institute," which was to be established and maintained out of part of that fund. Although the Mayor and City Council has not applied the principal of the fund derived from the McDonogh estate to any other purpose than the establishment and maintenance of the school farm, that principal, and other property it has received, or may hereafter receive from that estate, is as properly, if not more properly, applicable to the free schools contemplated by McDonogh.

If the will of Barnum were liable to no other objection, it would be impossible for the Court, with certainty, to determine, for which of the schools the property claimed by the Mayor and City Council of Baltimore under the will of Barnum was intended, or in which of them a chair shall be established.

It is conceded by the opinion of the Court below, and in the argument below was practically conceded by the counsel for the appellees, that the foregoing contentions would be unanswerable, but for the Act of Assembly of 1842, ch. 86 ; but it was contended by them and decided by the Court below, that, by virtue of that Act, the devise in question is now valid.

If the contention of the appellees be correct, the Mayor and City Council of Baltimore can now hold all of the property derived from the estate of McDonogh, and all claimed by it under the will of Barnum, for its general corporate purposes, entirely discharged of the trusts in-

tended to be imposed upon the property by the testators.

The title of the Act shows its purpose. It is entitled, "An Act to confer additional powers upon the Mayor and City Council of Baltimore." There is nothing in the title or in the body of the Act to indicate an intention to authorize the Mayor and City Council of Baltimore to receive and hold property in trust and to act as trustee, in cases in which an individual might not so do. There is nothing in it to indicate an intention to make valid a devise to the city in trust for purposes or beneficiaries so indefinite, that the Courts could not enforce the execution of the trust, in cases in which the devise would be void, if made to an individual instead of to that corporation.

The Act of 1842 only authorizes the city to hold property in trust for any of the purposes designated in it, if so defined, that the execution of the trust can be enforced by the Courts. It did not intend to prescribe what definition of the trusts should be sufficient, or to enact that the corporation might take for trusts so indefinite that the execution of them could not be so enforced. But the trust, for which the property in controversy is claimed, is not within the provisions of the Act of 1842, properly interpreted.

Considering that Act as a whole, no trust for educational purposes can be upheld, as belonging to either of the three general classes of trust therein provided for. The kind of educational trust which the corporation may, by virtue of its provisions, administer, is specially provided for, specially defined. Every other trust, for educational purposes, is thereby precluded.

If it cannot be supported as a trust "for the general purposes of education," that Act cannot be invoked to uphold it.

The devise under the will of Barnum is for a special purpose, a special branch of education, in useful trades, in a special limited school, and therefore not within the terms of the Act.

It is further attempted to sustain the devise under the other language of the Act "in aid of the indigent and poor," or for "charitable purposes of any description whatsoever." Admitting for the sake of argument, that any education of the poor is "in aid of the indigent and poor," —that provision for any kind of education is one "for a charitable purpose," and that the devise in question might be sustained as one belonging to either of these classes, if the Act did not specify and limit the kind of educational trust, which the city might administer, no support for the devise can be found in that Act as it is, without nullifying that limitation; without treating as unmeaning and nugatory the words "for the general purposes of education." Meaning and effect must, if possible, be given to all of the words in the Act.

The education provided for by McDonogh is entirely different from that provided for by Barnum. The former, being general, might aid the city in the discharge of its corporate functions. The latter, being special, can only embarrass the city, by imposing on it a duty which it is incompetent to perform.

Another objection to this devise, is that the Act of 1842 requires all of the trusts authorized by it to be "within the limits of the City of Baltimore." This means, either that the instrumentalities of the trust, or the beneficiaries under it are to be within these limits. The McDonogh Institute, for which this devise is claimed, fulfils neither of these conditions. It is situated beyond these limits. The beneficiaries of it may be as well beyond as within these limits. Its benefits cannot be limited to those within the boundaries of the city, without violating the will of McDonogh. They cannot be extended to those beyond, without violating the Act of Assembly.

*James L. McLane, City Counsellor,* and *I. Nevett Steele,* for the appellees.

The condition against his connecting himself with an order or society of the Roman Catholic Church attached to the devise of the income to Frank Barnum, is not void as being against public policy. At the time of the testator's death, Frank Barnum was not a priest, &c. He consequently was entitled to receive the income of the estate, *until* the happening of the contingency on which it was to cease. When, therefore, on the 31st of July, 1882, he connected himself with an order of the Roman Catholic Church, his estate in the income ceased by the very terms of its creation and the limitation over to the Mayor and City Council of Baltimore, became operative.

This is not a condition subsequent, but is a limitation which marks the duration of the estate. But even if it were a condition subsequent, this Court has expressly recognized the validity of such a limitation. *Mitchell vs. Mitchell*, 18 *Md.*, 405 ; See also *In re Dickson's Trust*, 1 *Simon*, (*N. S.*,) 46.

Frank Barnum's interest in the estate ceased by the very terms of the will upon the laying of the attachment in the hands of Mr. Tagart, as executor and trustee under the will of Zenus Barnum.

Prior to the Act of 1842, ch. 86, the Mayor and City Council of Baltimore had power to take property by gift or devise in trust for purposes germane to the objects of its incorporation, or which would promote, aid, or assist in carrying out or perfecting its corporate objects. 2 *Dillon Mun. Corp.*, (*3rd Ed.*), sec. 567 ; *Mayor, &c., of Phila. vs. Elliott*, 3 *Rawle*, 171 ; *Vidal, &c. vs. Girard's Ex'rs*, 2 *How.*, 187, 188.

Had the objects of this devise, therefore, been certain, there could be no question of its validity or of the power of the Mayor and City Council to act as trustee.

But it is said that as the " McDonogh Educational Fund and Institute" is not incorporated, the beneficiary is vague and uncertain, and there is, therefore, no *cestui que trust*

in being, capable of enforcing the trust in a Court of equity, and the devise must be declared invalid.

It was contended by the appellees and was so decided by the Court below, that since the passage of the Act of 1842, ch. 86, this objection has no weight.

This Act should receive a fair construction for the purpose of attaining the end the Legislature had in view; and the state of the law at the time of its passage is to be considered for the purpose of ascertaining its meaning and object.

The Court of Appeals had decided in *Trippe vs. Frazier and Wife,* 4 *H. & J.,* 446; *Dashiell, et al. vs. The Attorney-General,* 5 *H. & J.* 392, and 6 *H. & J.,* 1, that the Statute of 43 *Elizabeth,* chapter 4, was not in force in this State, and that Courts of equity, independently of that Statute, had no jurisdiction over charities; and that devises in trust for charitable uses stood upon the same footing as other trusts, and required, not only a trustee, but a *cestui que trust* in being, and capable of enforcing the trust.

About the year 1838, Henry Peters died, leaving a will by which he gave certain property to the Mayor and City Council of Baltimore, for the benefit "of the indigent and necessitous poor persons, who may, from time to time, reside within the limits, as now known, of the twelfth ward," &c.    *Wilderman vs. Mayor and City Council of Baltimore,* 8 *Md.,* 551.

According to the statement of Mr. Frick, in his argument in the above case, the Act of 1842, ch. 86, was passed for the purpose of making valid that bequest, and the retrospective language of the Act seems to confirm this view.

If, therefore, the contention of the appellants, that the Act was simply intended to empower the Mayor and City Council of Baltimore to act as trustee for *valid* and *certain* trusts, be correct, the Act was not only useless, because the Mayor and City Council already had that power, but

it failed to effect the very object of its passage, viz., to make valid the trust in Peters' will, which under the decisions of this Court was void, because there was no beneficiary who could enforce it in equity. But since it cannot be supposed that the Legislature meant to do a thing that was useless, the Act of 1842 must have been intended, as its language plainly shows, and as the circumstances, under which it was passed, would seem to indicate, to enable the Mayor and City Council of Baltimore to take property in trust by gift, devise or bequest, for the purposes and objects mentioned in the Act, which, without its aid, would be obnoxious to the objection of vagueness and uncertainty.

If this be so, then the argument of the appellants must come to this—that a gift or devise to the Mayor and City Council in trust for a purpose in the very language of the Act, *e. g.,* "in aid of the indigent and poor within the limits of the City of Baltimore," would be invalid, and, therefore, the Act of 1842, ch. 86, solemnly enacted by the Legislature of this State, would be a nullity.

Moreover, in *Wilderman's Case,* the Court of Appeals virtually admitted that the bequest would have been good, had the Act of 1842 been passed prior to the death of the testator, at which time the rights of his next of kin became vested.

The construction and effect of this Act were considered in the case of McDonogh's will, by the Supreme Court of the U. S., and it was held and decided that under the provisions of the Act, the Mayor and City Council of Baltimore had power to take and administer the trust funds devised to it by the will, although, from the character of the trusts, there were no beneficiaries who could enforce them. *Executors of McDonogh vs. Murdoch,* 15 *How.,* 412–13–14.

While it is true that the Statute of 43 *Elizabeth, ch. 4,* is not in force in this State, and that this Court has always

repudiated the principles of equity jurisdiction over char-
ities, of which that statute was simply declaratory, (*Vidal
vs. Girard's Ex'rs,* 2 *How.,* 187, 188), yet gifts and devises
for charitable or educational purposes are not against the
policy of this State, but are, on the contrary, favored by
it. *Revised Code, ·page* 316, *sec.* 14; *page* 320, *sec.* 48;
*page* 261, *sec.* 76.

The Act of 1842, ch. 86, creates and establishes *statutory*
trusts, and being such, they are not affected by the pre-
vious decisions of this Court, which would be in conflict
with the purposes of the Act. The fact that the "Mc-
Donogh Educational Fund and Institute" is not a corpo-
ration, is a matter of no importance whatever, if the object,
and purposes of the trust fall within the provisions of the
Act.

The Mayor and City Council are authorized by the Act
to administer the general trusts which it embraces, just
as the numerous charitable corporations of this State are
authorized by their charters, to administer the trusts con-
fided to them.

The devise in this case falls within all of the following
objects or purposes enumerated in the Act of 1842, ch. 86:
"Any of their general corporate purposes, 'in aid of the
indigent and poor,' 'for the general purposes of education,'
or 'for charitable purposes of any description whatsoever.'"

In the construction of the clause "for the general pur-
poses of education," the same meaning must be given to the
word "*general,*" as if the Legislature had said "City"
purposes of education.

The boys appointed to the McDonogh Institute being
selected from among the poor boys of the entire city, the
devise is for the *general* purposes of education.

But even if this Court should be of opinion that the
devise is not for the general purposes of education, yet the
designation of a particular purpose, if within the general
objects of the corporation, cannot affect the result. *Mc-*

*Donogh's Ex'rs vs. Murdoch, &c.,* 15 *How.,* 413; *Mayor, &c., of Phila. vs. Elliott,* 3 *Rawle,* 171.

The educational or charitable purpose is "within the limits of the City" as contemplated by the Act of 1842, chapter 86.

The Act does not mean, as is contended by the appellants, that the *place* of exercising the trusts for the objects or purposes provided for by it, should be located within the limits of the city, but simply that the charitable purpose shall be a purpose to benefit the inhabitants of the city.

ALVEY, C. J., delivered the opinion of the Court.

The bill in this case was filed by Samuel H. Tagart, executor and trustee appointed by the will of Zenus Barnum, deceased, for the purpose of having the rights of parties declared in respect to a large portion of the estate of the deceased, which is claimed by his heirs-at-law and next of kin as against the disposition thereof made by the will. The disposition of the property as made by the will was sustained by the decree of the Court below, and the heirs-at-law and next of kin of the testator have appealed.

The testator died on the 23rd of March, 1882, having made his will in due form, which was soon after his death admitted to probate. He left surviving him, as his only heirs-at-law and next of kin, two brothers and two sisters, one of the brothers being Frank Barnum, upon whose election the principal question in this case has arisen. The estate has been settled by the executor, and the question now is, upon the events that have happened, who is entitled to the estate.

The testator, by his will, devised and bequeathed in trust to his friend, Samuel H. Tagart, and to his successors in the trust, the entire estate, real and personal, of which he died seized and possessed; and after declaring certain uses, and investing the trustee with certain powers, he

proceeded to declare the principal trust of his will, in regard to the property now in controversy, in the following terms:

"In the second place, in trust, as to all the rest and residue of my estate, to appropriate and apply the net income thereof, as follows:

"If, within twelve months after my decease, my brother, Frank Barnum, shall withdraw from the priesthood in the Roman Catholic Church, (should he be at the time of my death a priest in said church,) and from any and every order or society connected with said church, of which he may be a member, and until he shall become a priest or deacon in said church, or shall connect himself with some order or society of said church, or until the income of said property, or some part thereof, shall be sought to be subjected to the payment of his debts or liabilities by legal process, I direct that the net income of said rest and residue of my estate, be paid to the said Frank Barnum in every year, in such instalments as the said trustee, or his successor or successors, may deem best, for and during the term of the natural life of the said Frank Barnum.

\*        \*        \*        \*        \*        \*        \*        \*

"But if within twelve months after the time of my death, my brother shall not have withdrawn from the priesthood aforesaid, (should he be at the time of my death a priest in said church,) and from any and every order or society of which he may be a member, connected with said church, or if he shall at any time hereafter become a priest or deacon in said church, or become a member of any order or society of said church, or if said income, or any part thereof, shall be sought to be subjected by legal process to the payment of his debts or liabilities, and he shall be without wife or children, or if he shall die without leaving a child or children living at the time of his death, who shall attain the age of twenty-one years, then (subject to the life estate or estate for widowhood aforesaid in one-

third thereof), I give, devise and bequeath the said rest and residue of my estate to the Mayor and City Council of Baltimore, in trust, for the McDonogh Educational Fund and Institute, to be applied to establishing a chair therein, to be called the 'Zenus Barnum Chair,' to promulgate such a course of instruction in said institute as will aid in the practical application of the Mechanical Arts—the said estate and property to be held under the same control and direction as the estate and property now held by said fund and institute, and to be so appropriated and applied as to give boys in that institution such useful and practical mechanical education as will enable them to gain a livelihood by skilful manual labor—the surplus income, after the payment of the professor, to be applied to the erection of necessary buildings, and furnishing needed tools and the like for the above mentioned purposes."

It is conceded that at the time of the testator's death, his brother, Frank Barnum, was not a priest or deacon in, nor a member of, or connected with, any order or society of the Roman Catholic Church; but that on the 31st of July, 1882, he became a member of, and connected himself with, an order or society of that Church, and he has remained so connected ever since. He was unmarried and without issue at the time of the death of the testator, and has so remained to the present time. It also appears that after the present bill was filed, an attachment was sued out against Frank Barnum, on a judgment against him, and laid in the hands of Tagart, the trustee, to affect the interest under the will. That proceeding is still pending.

It is agreed that the only fund held by the Mayor and City Council of Baltimore, derived from the estate of John McDonogh, at the date of the will of Zenus Barnum, the testator, is the sum of $650,000, and that the only object or purpose to which any portion of that sum was or has been applied, is to the establishment, maintenance and support of the "School Farm" in Baltimore County,

known as the "McDonogh Institute." It is admitted that such School Farm was established about the year 1872, and that it has been ever since in operation. It is admitted that several professors are employed, and many boys are taught therein; and that there is no other school or institute in this State known as the "McDonogh Institute." This school or institute was established and has been maintained by the funds alone which were received by the Mayor and City Council under the will of John McDonogh; and its establishment, and the government thereof, have been under and in pursuance of ordinances and resolutions of the Mayor and City Council by an agency styled "The Board of Trustees of the McDonogh Educational Fund and Institute," created by ordinance.

For a full history of the origin, objects and purposes, terms and conditions of the McDonogh school or educational fund bequeathed to the City of Baltimore, and of the "School Farm" directed by the will of McDonogh to be founded by the city, reference may be made to the case of *McDonogh vs. Murdock*, 15 *How.*, 367, where all the facts appear, and the rights of the city under the will of McDonogh were declared and established.

It appears from the answers of the appellants, and the opinion of the learned Judge below, that several questions were raised in the Circuit Court, upon the construction of the will of Barnum, that have not been discussed by counsel in this Court. The proposition, or rather suggestion, made in the answers of the appellants, that as Frank Barnum was not a priest, deacon, or member of any order or society, connected with the Roman Catholic Church, at the time of the death of his brother, he therefore took no interest or estate under the will, has no support in any principle of fair construction; and the learned Judge below was quite right in holding that Frank Barnum took the equitable estate, and became entitled to the income thereof, from the death of the testator to the time of his

becoming a member of the order or society connected with
the church.   And so in regard to the question of its being
against·public policy to make the devise or bequest de-
pendent upon the condition that the devisee or legatee
should withdraw from the priesthood or membership of
any order or society connected with the church, or refrain
from forming any such connection, the authorities leave no
room to question the right of the testator to prescribe such
condition.   Whatever may be thought of the opinions
of the testator, or his prejudices, the law recognizes his
right to make the enjoyment of his bounty dependent
upon the condition attached in this case.   *Mitchell vs.
Mitchell*, 18 *Md.*, 405 ; *Vidal vs. Girard*, 2 *How.*, 127,
199 ; *Dickson, Ex parte*, 1 *Sim.*, (*N. S.*,) 37.

The principal question involved in the case is, whether,
upon the determination of the estate of Frank Barnum,
the limitation over of the trust estate to the Mayor and
City Council of Baltimore, for the purposes mentioned, be
valid, and of a nature to be executed in accordance with the
intention of the testator.   That question has been most
fully and ably argued by counsel at the bar, and with the
assistance derived from such discussion, we have been ena-
bled to come to a definite conclusion as to the rights of
the parties under the will.

On the part of the heirs-at-law and next of kin of the
deceased, it has been strongly contended that the limita-
tion over to the Mayor and City Council in trust is void,
because of the want of power in the municipal corporation
to accept and hold the trust created by the will, and be-
cause of the undefined and uncertain object of the trust,
or rather its non legal entity, and the consequent impossi-
bility to enforce the execution of that trust, according to
the plan of the testator.   And the familiar cases of *Dashiell
vs. Atty. Genl.*, 5 *H. & J.*, 392 ; *Wilderman vs. M. & C.
C. Balto.*, 8 *Md.*, 551 ; *Needles vs. Martin*, 33 *Md.*, 609 ;
*Church Extension, &c. vs. Smith*, 56 *Md.*, 362, and *Rizer*

*vs. Perry,* 58 *Md.,* 112, have been relied upon and enforced upon us as being entirely conclusive of the proposition sought to be maintained.   But this Court is of opinion that the cases relied on do not, by any means, conclude the question presented in this case.

Those cases are quite distinguishable from this in many respects ; and while it is true that the Statute of 43 Elizabeth, ch. 4, in regard to charities and charitable donations, has never been adopted in this State, it does not follow that charitable bequests or donations, such as that designed by the testator in the will before us, may not be sustained, altogether apart from and independent of the provisions of that Statute.   If there be parties capable of taking the subject-matter of the trust, and objects legal and definite, to be subserved or benefited by its execution, so that a Court of equity may take cognizance of and enforce the trust, these are the essentials, and only essentials, to the validity of the trust, though the object of the trust be in its nature  charitable.    In  cases  where  these  essential elements of certainty exist, there is no greater difficulty in the exercise of the supervisory power of a Court of Chancery over a trust for charity than there is in the exercise of such power over trusts of any other nature. The Court of Chancery in such cases only exercises its original inherent jurisdiction over trusts.   In respect to trusts for charity, irrespective of the provisions of the Statute of 43 Elizabeth, ch. 4, the question that most frequently arises, and the one that has given the greatest difficulty is, whether the objects intended to be benefited or promoted are sufficiently certain and definite to enable the Court to declare who are entitled, to the exclusion of all others, and to secure to them the benefit of the trust. In the cases relied on by the appellants, the donations failed because of the uncertain and indefinite character of the objects of the charities intended to be established.

In this case, the first question to be determined is, whether the municipal corporation of the City of Baltimore

is capable of taking devises and bequests of real and personal estate for the objects and purposes mentioned in the will; and the second, whether these uses are charitable uses, valid in their nature, and sufficiently certain and definite to be carried into execution, and enforced by a Court of equity.

1. With respect to the first question, the original charter of Baltimore City, granted by the Legislature in 1796, ch. 68, invested the corporation with power to " purchase and hold real, personal and mixed property, or dispose of the same, for the benefit of the said city ; " and this power the corporation still holds. *Code Pub. L. L., Art.* 4, *sec.* 1. Whether this power enabled the corporation to take real and personal property *in trust,* it is unnecessary to decide in this case ; though, according to the great weight of authority, it would seem to be entirely capable of taking property *in trust,* for purposes germane to the objects of the corporation, or which would promote, aid or assist in carrying out or perfecting those objects. 2 *Kent Com.* 280; 2 *Dill. Mun. Corp. (3rd Ed.), sec.* 567, and cases there cited; *Vidal vs. Girard,* 2 *How.,* 127; *McDonogh vs. Murdock,* 15 *How.,* 367 ; *Perine vs. Carey,* 24 *How.,* 645. In the charter of Baltimore City, however, there is express power conferred in respect to this subject. By the Act of 1842, ch. 86, since forming part of the charter of the city, it is provided that the " corporation may receive in trust, and may control for the purpose of such trusts, all money or other property which may have been or shall be bestowed upon such corporation by will, deed, or in any other form of gift or conveyance in trust for any general corporation purpose, or in aid of the indigent and poor, or for the general purposes of education, or for charitable purposes of any description within the said city." *Code Pub. Local Law, Art.* 4, *sec.* 2. A more comprehensive power could not be desired, and it would seem to embrace the very subject of contention in this case. It authorizes

by express terms the corporation to accept and hold *in trust* any property given *for purposes of education*, or *for charities of any description*. The fund bequeathed to the city in trust, by the will before us, is for purposes of education, as well as for a charitable purpose ; and if there was no question as to the objects of the charity, or as to the power of a Court of equity to enforce the execution of the trust, there could be no room for controversy.

In regard to the bequest of McDonogh to the City of Baltimore of funds in trust, for the establishment of a charity to promote education and industry, the Supreme Court of the United States, in the case already referred to of *McDonogh vs. Murdock,* 15 *How.,* 413, held the city to have capacity to receive and hold the funds in trust for the purposes designated ; and in speaking of the application of the trust fund, the Court say : " All the property of a corporation like Baltimore is held for public uses, and when the capacity is conferred or acknowledged to it to hold property, its destination to a public use is necessarily implied. Nor can we perceive why a designation of the particular use, if within the general objects of the corporation, can affect the result ; nor is there anything in the nature of the uses declared in this will which can withdraw from the legacy a legal protection." And so in this case. The city is authorized and required by the laws of the State to establish and maintain a system of free schools for the benefit of its citizens, and therefore the subject of education is within the general objects of the corporation, and there can be no good reason why the particular designation of the use, and the manner of appropriation of the fund in question, should be subject to legal objection. It is devoted or dedicated to a great public benefit ; it promotes, aids and assists in carrying out and perfecting the objects of the corporation.

But it is argued for the appellants that the provision of the charter of the city authorizing the holding of property

in trust, only so authorizes where the objects and purposes of the trust are of a certain and well defined nature, and capable of being enforced; that it was not the object of that provision of the charter to change the pre-existing law, and to prescribe what definition of trusts should be sufficient, or to declare that the corporation might take property in trust, where the objects and purposes are so indefinite as to be beyond the power of a Court of equity to compel enforcement of the trust. And without stopping to consider whether this be the correct interpretation of the provision of the statute or not, it is sufficient for us to say that the requirements of this case do not make it necessary that we should, in this respect, hold the contrary of that for which the appellants contend. In our view of this case, the construction of the statute, further than to see that it authorizes the corporation to receive and hold the property in trust for educational and charitable purposes, is wholly unnecessary. We therefore forego further remark upon it.

2. We come now to the second question, and that is, whether the objects and purposes, and the beneficiaries of the trust, are sufficiently certain and defined to render the trust valid, and to enable a Court of equity, by virtue of its inherent jurisdiction and power over trusts, to enforce the trust, in accordance with the plan and intent of the testator. And of this we entertain no doubt.

In the event that has occurred, the testator devised and bequeathed the rest and residue of his estate to the Mayor and City Council of Baltimore, in trust, for the McDonogh Educational Fund and Institute, to be applied to establishing a chair therein, to be called the "Zenus Barnum Chair," to promulgate such course of instruction in said Institute as will aid in the practical application of the mechanical arts. He then declares that the property so given shall be held under the same control and direction as the estate and property now held by said Fund and Institute, and to

be so appropriated and applied as to give boys in that institution such useful and practical mechanical education as will enable them to gain a livelihood by skilful manual labor. This is certainly a benevolent and charitable design, and falls fully within the legal definition of a charity. It is therefore entitled to the most liberal construction for its support.

As we have already stated, it is conceded that there never has been any such incorporated body as the "McDonogh Educational Fund and Institute;" but that there has been for many years, and still is in existence, a municipal organization or agency, constituted by ordinance of the city, under the name and style of the "Board of Trustees of the McDonogh Educational Fund and Institute," for the administration of the educational fund derived under the will of McDonogh. This board is clothed with large powers for the management of the fund, and for keeping intact their own body. It appears that the funds derived from the McDonogh estate not being sufficient to establish and maintain the free school or schools contemplated by McDonogh, such funds have been devoted exclusively to the purchase, the establishment and maintaining of the "School Farm," authorized and directed to be maintained by the will. This farm, with its organized school thereon,—with its teachers and pupils,—is known as the "McDonogh Institute." And this "School Farm," and school thereon, are, by ordinance of the city, under the exclusive management and control of the "Board of Trustees of the McDonogh Educational Fund and Institute." By the ordinance constituting the board and defining its powers, it is provided that "all the money, securities, and property of every kind and description, with the increment thereof, which has or may come to the city (from the McDonogh estate), shall pass to and be vested in said board of trustees."

Now, with respect to the intention of the testator, in view of all the admitted facts of this case, we cannot per-

ceive that there is any well grounded room for doubt, that he intended the estate given to be managed and controlled by the "Board of Trustees of the McDonogh Educational Fund and Institute," and that it should be applied by that municipal agency, in the manner designated in the will, in connection with and as part of the "McDonogh Institute." That is the only educational institute, founded upon the McDonogh fund, to which he could have referred; and we must suppose that he knew perfectly well how that charity was organized, and by what agency it was controlled. And that being so, what uncertainty or difficulty can there be in the application of the fund to the purpose and objects designated by the testator? If the city was capable of taking and organizing for the administration of the McDonogh fund, why should it not be equally capable of taking and applying the Barnum fund? Seeing that both funds have a common object to subserve, and that the latter is but an adjunct to the former, and both being in aid and promotive of the general objects of the municipal corporation, both are equally within and subject to the administrative control of the agency instituted by the city ordinance.

It is objected that the "Board of Trustees of the McDonogh Educational Fund and Institute" is not an incorporated body; and that "The McDonogh Institute" is not situated within the limits of the city; and therefore the beneficiaries of the trust are uncertain and undefined, and without legal identification as a body; and that the school or institute, being beyond the limits of the city, the fund does not constitute a trust for the benefit of the citizens of the municipality, within the meaning of the charter. But in neither of these objections do we perceive that there is any such insuperable difficulty in maintaining the validity of the trust, as is supposed by the objectors.

The municipal corporation, taking the fund in trust, takes it for the benefit of its citizens or the public, to be applied according to the terms of the trust. It is there-

fore, in a certain sense, *cestui que trust*, as well as trustee. The property acquired by it, though in trust, is for a public use; and the corporation is liable for the execution of the trust by and through the agencies it may create for the purpose. It is not the agencies of the municipal corporation so much to which we must look for the execution of the trust, as to the corporation itself. Therefore, if the present bequest, instead of being to the city in trust for an educational purpose, had been to the city in trust to establish or maintain a house of correction, a hospital or pesthouse, within or without the city, there can be no doubt of the validity of such trust, and that the objects would be sufficiently defined, notwithstanding the trustees or managers of such institutions, appointed by the city, had never been incorporated by law. And that being so, there can be no substantial reason assigned why the present bequest is not equally good. Nor is the fact that the " McDonogh Institute " is located beyond the limits of the city, a substantial objection to the validity of the trust. The Institute or School Farm is managed by city agencies, and for the benefit of the citizens of the corporation; and there is nothing to forbid, either in the bequest itself, or in the charter of the city, the present location of what is known as the " McDonogh Institute." The ordinance providing for the board of trustees or managers, authorized the purchase of the farm, and the erection of the buildings thereon, in the vicinity of the city; and it has never been supposed that there was any legal objection to the power thus conferred upon the managers.

Lastly, it has been very earnestly argued against the validity of this trust, that there is no power or jurisdiction by the exercise of which the trust can be enforced; that if it be established, to use the strong language of the brief, " no power on earth can prevent the corporation from using the property for the establishment and maintenance of a pest-house, or an alms-house ; for the support of its fire

Barnum, *et al. vs.* Mayor, &c., of Baltimore, *et al.*

department, or its water department, or for any other corporate purpose." And if such proposition were maintainable upon authority, we should desire no further argument to justify us in declaring against the validity of the trust. But we are far from acceding to the correctness of the position thus assumed on the part of the appellants, as applied to a case like the present. No principle is now better settled than that where property is held by a municipal corporation *in trust,* or where the trust reposed in the corporation is for a charity within the scope of its duties, a Court of Chancery will prevent the misapplication of the trust funds, and compel the execution of the trust. And this jurisdiction is not founded upon the Statute of 43 Elizabeth, but is part of the original inherent jurisdiction of the Court of Chancery over the subject of trusts. The Court will interpose and exercise its jurisdiction at the instance of the Attorney-General, or, according to many authoritative precedents, upon the application of the corporators or persons interested. The result of the authorities upon the subject is well stated by Judge DILLON in his work on *Municipal Corporations ;* and without doing more, we may refer to that valuable work, and the cases there collated by the learned author. 2 *Dill. Mun. Corp.,* (*3dEd.*), secs. 567, 909 ; *Att'y-Gen'l* vs. *City of Dublin,* 1 *Bligh,* (*N. R.,*) 312.

It follows from what we have said, that, in the opinion of this Court, the decree appealed from must be affirmed; and it is so ordered.

*Decree affirmed.*

(Decided 18th June, 1884.)