## SEXTON v. SMITH *et al.*

No. 1671.    Opinion Filed March 19, 1912.

(122 Pac. 686.)

1.   **TOWNS — Illegal Warrant — Injunction — Remedy of Taxpayers.**
     Resident taxpayers of a township are proper parties plaintiff in
     a suit to enjoin the payment of a township warrant, illegally is-
     sued in payment for certain bridges.

2.   **BRIDGES—Erection.**   Section 7783, Comp. Laws 1909, confers the
     control over bridges more than twenty feet long on the county
     commissioners, and the township highway commissioners have no
     authority to enter into a contract for the building of a bridge
     more than twenty feet in length.

3.   **SAME—Building Contracts—Competitive Bids.**   Where contracts
     are to be let upon competitive bids, the prospective bidders must
     have an opportunity to inspect plans and specifications of the
     proposed structure, and bids cannot properly be received or ac-
     cepted to build bridges of which no definite plans and specifica-
     tions have been made.

4.   **SAME—Contracts to Build—Validity.**   It is an abuse of discretion
     for a board of highway commissioners to accept the highest of
     four or five bids to build certain bridges, where the bidder is
     without special experience in such work, and without means to
     build the bridge, except as paid him in advance by the township.

(Syllabus by Rosser, C.)

*Error from District Court, McIntosh County;*
*Preslie B. Cole, Judge.*

Action by T. L. Smith and others against Robert Sexton and
others, Highway Commissioners of Simpson Township, McIn-
tosh County.   Judgment for plaintiffs, and defendants bring error.
Affirmed.

*C. H. Tully* and *J. Carter Cook,* for plaintiffs in error.

*Whitaker & Van Court,* for defendants in error.

Opinion by ROSSER, C.   The defendants in error, T. L.
Smith, B. H. Harrison, and H. A. Lamb, hereinafter called
plaintiffs, brought this suit in the district court of McIntosh

county, against the plaintiffs in error, Robert Sexton, J. H. Henderson, and Samuel C. Cozad, as highway commissioners of Simpson township, McIntosh county, hereinafter called defendants, to enjoin the defendants from issuing a warrant in payment of the contract price of the construction of certain bridges in Simpson township, and, in case the warrant was already issued, to enjoin the defendant Samuel C. Cozad, as treasurer of the township, from paying the warrant, or from paying any sum for the construction of the bridges. The petition alleged that the plaintiffs were residents of Simpson township, McIntosh county, state of Oklahoma, and possessed real property within the township subject to taxation; that the defendant Robert Sexton was the duly elected, qualified, and acting trustee; that the defendant J. H. Henderson was the clerk of the township; that the defendant Samuel C. Cozad was the treasurer of the township, and the three constituted the board of highway commissioners; that the defendants were having constructed certain bridges in the township, and had entered into a contract with one Robert Crosson for the construction of the three bridges. They further allege that they were unable to ascertain the exact cost or terms of the contract, but that the defendants had agreed to pay about $1,750 for the three bridges; that all of them were over twenty feet in length; and that the reasonable cost of constructing them would not be over $300. They allege that the contract was unlawfully entered into, and that it was let by fraud and collusion of Robert Crosson, and was illegal and void, and that to pay for the bridges out of the township funds would cause irreparable injury to the plaintiffs. The county judge issued a temporary injunction. At the trial the plaintiffs were permitted to amend their petition to allege that the contract entered into was not in compliance with the law, in that it was not based upon any regulation for the commencement or completion of the bridges, or the terms of payment thereof, and that it was not signed by the defendants, as board of highway commissioners; that no claim was filed with the board, or audited or allowed by them, for the bridges; that the warrant for $1,750 was issued the day the

bids were received, and the contract entered into; and that the warrant was issued contrary to law. There was a decree making the injunction permanent, and defendants have appealed to this court.

The evidence showed that each of the bridges was over twenty feet long; one was 21 feet long, another 54 feet long, and the third 48 feet long. The evidence shows that the bid of Robert Crosson of $1,750 was the highest bid out of four or five that were made. Crosson did not build the bridges, but assigned the contract to one of his bondsmen, who had the bridges built.

Section 7783, Comp. Laws 1909, provides:

"That all bridges, culverts, and roads shall be at least fourteen feet wide, and all bridges and culverts not more than twenty feet in length shall be under the control and supervision of the board of highway commissioners of· such township and the road supervisor in whose district such bridge or culvert is situated, and all bridges more than twenty feet long shall be under the control and supervision of the board of county commissioners. * * *"

The evidence shows that plaintiffs were resident taxpayers of Simpson township, and as such had the right to bring the action to enjoin the payment of the warrant, if it was illegally issued. *Kellogg v School District No. 10,* 13 Okla. 285, 74 Pac. 110; *Hannan v. Board of Education,* 25 Okla. 372, 107 Pac. 646; *Bowles v. Neely,* 28 Okla. 556, 115 Pac. 344.

The bridges were more than twenty feet in length, and therefore the township trustees had no right to let the contract. It seems to be seriously urged that, if the contract did not call for a bridge more than twenty feet long, the trustees had the right to make the contract; and, if it so happened that it took a longer bridge to reach across the creek, no one can complain. The contract did not specify the length of the bridges. It merely provided that they should extend across certain streams. The advertisement did specify the length of the bridges, but it also named the streams they were to cross. Undoubtedly, the persons bid in accordance with the width of the streams. The pur-

pose of the statute restricting the control of the township trustees to bridges less than twenty feet in length was to prevent them from expending more money than was necessary to build bridges across streams of greater width. They had no authority to build part of the way across a stream. A contract made by them to build a section of a bridge only twenty feet long would have been void. They had no authority to build part of a bridge, and unless the structure extended across the stream it would not be a bridge. They had no authority to build a bridge more than twenty feet long. They had no right to build across or part of the way across a stream of greater width than twenty feet, or a stream that required a bridge more than· twenty feet in length.

As stated, neither the advertisement for bids nor the contract contained plans or specifications by which the bridges were to be built, and if it had been within the power of the board to make the contract, it had no right to receive bids except upon specifications submitted to the bidders, so that they could know exactly what they were bound to do and bid accordingly. *Hannon v. Board of Education*, 25 Okla. 372, 107 Pac. 646, 30 L. R. A. (N. S.) 214. Neither the notice nor advertisement for bids said anything whatever about the width or height of the bridges, but said each bridge was to be twenty feet long. As a matter of fact they were to be longer. The contract provided that the bridges were to be fourteen feet wide, and no span was to be more than twenty feet long, with approaches to connect with the ground work, but did not specify the length of the approaches. Nothing was said about the height of the bridges, except that they were to be above high-water mark. It is no cause for amazement that, as one of the trustees complained, it was hard to understand all the bids, except Crosson's, for it was at least equally as hard for the bidders to understand what they were bidding on. This case well illustrates the wisdom of the law which places letting of contracts involving expenditures of much money in the hands of the county commissioners, who are, by reason of experience, more likely to under-

stand such questions, who are paid to give time to such matters, and who can call on the county attorney to assist in drafting contracts.

If everything else in connection with the transaction had been regular, the contract with Crosson would have been invalid because of the abuse of discretion on the part of the township trustees in letting the contract to him in preference to lower bidders. The statute provides that the contract shall be let to the lowest responsible bidder. This contract was let to the highest bidder. The trustees attempt to justify this action upon the ground that the other bidders were not responsible. It is true that, where the statute provides for the letting of contracts to the lowest responsible bidders, the officers making the contract may, for sufficient reasons, exercising· their discretion, let the contract to some one other than the lowest bidder, but there must be some reason for the letting to a higher one, and the reason should be all the greater for letting to the highest of four or five bidders. In order to justify their conduct in issuing the warrant at the time the contract was made, and before any work was done, the defendants stated that Crosson said he could not build the bridges unless he could get some money, and from the testimony it is inferable that they issued him the warrant for the purpose of furnishing him means to build the bridge. If he was without means to build the bridge, it is hard to see how any honest man could be less responsible. He stated that his occupation was farming principally. He did not claim to be an expert at the work of building bridges, and had had very little experience in such work. Therefore he did not fill the description of the lowest responsible bidder. He was the highest bidder, and was not responsible at all, and did not build the bridges.

The defendants complain of the admission of certain testimony. The admissibility of some of the testimony as set forth in the briefs is doubtful, if material; but it is clearly shown that the bridges were more than twenty feet long, and that no plans or specifications were contained in the advertisement for bids,

or furnished prospective bidders, and the testimony which is complained of could not have injured the defendants.

There are probably other grounds upon which the decree of the lower court should be affirmed, but they are not discussed in the briefs, and it is not necessary to decide them.

The judgment of the lower court should be affirmed.

By the Court: It is so ordered.