## PERRY PUBLIC LIBRARY ASS'N *et al.* v. LOBSITZ *et al.*

### No. 2410.    Opinion Filed March 11, 1913.

#### (130 Pac. 919.)

1. **APPEAL AND ERROR**—Orders Appealable—Temporary Injunction—Denial.  By reason of section 6067, Comp. Laws 1909, an order which refuses a temporary injunction may be reviewed by the Supreme Court on appeal.

2. **MUNICIPAL CORPORATIONS** — Public Libraries—Trusts—Enforcement—Taxpayer's Action.  A donor offered to an incorporated city of the first class the sum of $10,000 with which to construct a free public library upon condition that the city council by resolution would bind the city to furnish a site for said building and maintain said free public library at a cost of not less than $1,000 per year.   The city council by resolution accepted the donation and agreed to comply with the terms thereof by providing a site and by levying an annual tax upon the taxable property of the city sufficient in amount to maintain a free public library in said building at a cost of not less than $1,000 per year.   The building was thereupon constructed in accordance with the plans and specifications approved by the donor, and the cost thereof paid by the donor in the sum of $10,000.   Thereupon a library consisting of 1,300 volumes was placed in said building, and the building and its rooms were occupied as designed in the plans and specifications according to which it was constructed. After all these things had occurred, the city council was proceeding to take charge of said building and to establish therein the offices of the city, including the office of the mayor, city clerk, police judge, chambers of the city council, and authorized the use of a portion of said building for commercial club purposes and for public conventions.   **Held**, that the title to said building was not absolute in the city free of any conditions and restrictions, but that the city's title to same is that of a trustee; and that it holds same for the benefit of the public; and that a court of equity has jurisdiction to compel the execution of the trust in compliance with the terms of the gift; and that the action of the officers of the city in attempting to divert the building or a portion thereof to the above-named uses may be enjoined at the suit of resident taxpayers of the city and beneficiaries of the trust.

(Syllabus by the Court.)

*Error from District Court, Noble County;*
*W. M. Bowles, Judge.*

Suit by the Perry Public Library Association and others against James Lobsitz and others.   Judgment for defendants, and plaintiffs bring error.   Reversed and remanded.

*H. A. Smith, Henry S. Johnston,* and *P. W. Cress,* for plaintiffs in error.

*Chas. R. Bostick,* for defendants in error.

HAYES, C. J. This action was originally instituted in the district court of Noble county by the Perry Public Library Association and a large number of taxpayers against James Lobsitz, the mayor of the city of Perry, and the other defendants in error, who constitute the officers of said city, including its city council. Plaintiffs seek by their action to secure an injunction, enjoining defendants, as the officers of the city of Perry, from moving into a certain building in that city, known as the Carnegie Library building, and from establishing the city offices therein, and to enjoin defendants from occupying said building in any way, other than for the purposes for which it was erected, to wit, a free public library. On the 9th day of February, 1911, plaintiffs were granted by the judge of the district court of Noble county a temporary restraining order. At the same time, their petition for temporary injunction was set for hearing by the judge before him on the 11th day of the same month. When the petition for a temporary injunction was presented, evidence was introduced by plaintiffs in support thereof and by defendants in opposition. Whereupon the judge made an order denying to plaintiffs the temporary injunction and dissolving and setting aside the restraining order theretofore granted. It is from this order that the appeal is prosecuted.

Counsel for defendants, at the outset, contend that the order is not such a one as may be reviewed upon appeal. This contention is answered in the negative by the statute. Section 6067, Comp. Laws 1909, in part provides:

"The Supreme Court may also reverse, vacate or modify any of the following orders of the district court, or the judge thereof: (1) A final order. (2) An order that grants or refuses a continuance, discharges, vacates or modifies provisional remedies, or grants or refuses to vacate or modify an injunction."

The order here involved refuses a temporary injunction, and is, we think, clearly made appealable by the foregoing statute.

It is next urged that the granting or refusal of a temporary injunction is a matter resting largely within the discretion of the trial court or judge, and such an order will not be reversed by this court, except for an abuse of discretion.    This contention correctly states the rule in this jurisdiction.    *Reaves v Oliver*, 3 Okla. 62, 41 Pac. 353.  But when it appears by the petition that plaintiffs are entitled to the relief demanded and such relief or any part thereof consists in restraining the commission or continuance of some act, the commission or omission of which will produce injury to the plaintiffs, a temporary injunction may be granted to restrain such act (section 5756, Comp. Laws 1909) ; and where only questions of law are presented by the bill upon its face, or by the evidence, errors of the court or judge relative thereto are an abuse of discretion which the appellate courts will review and correct (High on Injunct. [4th Ed.] sec. 1696).    The allegations of the petition are supported by the evidence, and there is no material conflict between the evidence introduced on behalf of plaintiffs and the evidence introduced on behalf of defendants. The facts alleged in the petition and established by the evidence are, substantially, as follows:

In the early part of January, 1909, one of the plaintiffs in error wrote to Mr. Andrew Carnegie, soliciting from him a gift of a sum of money to the city of Perry for the purpose of erecting a library building and establishing a free public library. In answer thereto, Mr. Carnegie submitted a proposition that, if the city would agree by resolution of its council to maintain a free public library at a cost of not less than $1,000 a year and provide a site for a building, he would give $10,000 with which to erect a free public library building in the city of Perry.    On the 2nd day of February, 1909, the city council adopted a resolution in response to the proposition of Mr. Carnegie.    This resolution proved unsatisfactory to Mr. Carnegie, and on March 19, 1909, the city council adopted the following resolution:

"Resolution.    To accept the donation of Andrew Carnegie.

"Whereas, Andrew Carnegie has agreed to furnish ten thousand dollars to the city of Perry, Oklahoma, to erect a free public library building, on condition that said city shall pledge itself by resolution of council to support a free public library, at

a cost of not less than one thousand dollars a year, and provide a suitable site for said building; now therefore, be it resolved by the council of the City of Perry, Oklahoma, that said city accepts said donation and it does hereby pledge itself to comply with the requirements of said Andrew Carnegie. Resolved that it will furnish a suitable site for said building and will maintain a free public library in said building when accepted. At a cost of not less than one thousand dollars a year. Resolved that an annnual levy shall hereafter be made upon the taxable property of said city sufficient in amount to comply with the above requirements."

This resolution was approved by Mr. Carnegie. Plans and specifications for the building were drawn by the city council, showing the different rooms into which the building was to be divided and the use for which they were designed. After these plans and specifications had been approved by Mr. Carnegie, he authorized the city to proceed with the construction of the building and promised that he would pay therefor as the work progressed upon the certificate of the architect. The site was accordingly furnished by the city and the building constructed and paid for by Mr. Carnegie. After its completion, a library, consisting of about 1,300 volumes, that had theretofore been accumulated by the Perry Public Library Association, a voluntary association of the citizens of Perry, organized for the purpose of collecting a library, was placed in the building, and the building and each of its rooms are now occupied as designed in the plans and specifications submitted to Mr. Carnegie. The evidence establishes that a small levy was made by the city for the year preceding the completion of the building, and that, while no levy has been made by the city council for the current year in which this action is brought, it is the intention of the council to make such levy in accordance with its resolution and acceptance of the donation. All the evidence is to the effect that it is the intention of the city council to use the library as a city hall; to establish therein the office of the mayor, the clerk, the chambers of the city council, and the office of police judge; and, in addition thereto, to use a portion of said building for commercial club purposes and as a general convention hall. The testimony on behalf of the defendants is that they do not intend to use the entire build-

ing in this manner, and that they intend to maintain a library therein, and that it is not their intention to disturb or interfere with the library; but the evidence on behalf of plaintiffs, on the other hand, is that, in passing to the portions of the building intended to be used by the city council for the purpose of the city, the visitors and officers must pass through the rooms used for reading and sitting rooms to the library.

The effect of the donation by Mr. Carnegie to the city is not to make the city the owner of the library building without any restrictions upon its title or the use to which it may be put. The effect of his agreement with the city is to vest this property in the city as trustee for the benefit of the public, and the city holds this property as a trust, which it must administer in accordance with the terms of the trust. The power of the city of Perry as a municipal corporation to accept the donation of Mr. Carnegie with the restrictions imposed thereon has not been questioned by any of the parties to this proceeding; and the doctrine generally supported by the American courts is that, in the absence of disabling or restraining statutes, municipal corporations may take and hold property in trust for purposes not foreign to their institutions, or incompatible with the objects of their organization, and legacies of personal property directly to the corporation for benevolent or public purposes are valid in law. Dillon on Municip. Corp. (5th Ed.) sec. 988.

It is also well settled that as to all property or funds held by a municipal corporation in trust, equity, by virtue of its jurisdiction in respect of trusts and trust property, may assert its power to compel the observance of the trust and the discharge by the municipal corporation of its public duties in respect to the subject of the trust. Dillon on Municip. Corp. sec. 1574.

Counsel for defendants in error rest their contention that the municipal officers have authority in the premises to say for what purposes the building may be used upon sections 664 and 690, Comp. Laws 1909. The statutes cited vest in the mayor and council the care, management, and control of the city and its finances, and also authorizes the council to provide for the erection and government of any and all necessary buildings for the city.

Authorities have been cited which hold that buildings erected
for public purposes by municipal corporations may by the proper
authorities be allowed to be used incidentally for other purposes
either gratuitously or for compensation.   Among the cases cited
are *Bates v. Bassett,* 60 Vt. 530, 15 Atl. 200, 1 L. R. A. 166; *Bell*
*v. City of Platteville,* 71 Wis. 139, 36 N. W. 831.   But we do not
regard that either of these cases or cases of similar character are
in point, for the reason that they turn upon statutes vesting the
municipal authorities with power to control buildings constructed
by the municipal corporations out of funds derived from the pub-
lic revenue, the title to which and the control thereof is absolute
in the municipal corporations, subject, of course, to such limita-
tions as the statutes may impose.   In the case at bar the title of
the municipal corporation to the library is not absolute.   In
accepting the gift from the donor, the city took it with the ob-
ligation and limitations imposed by the donor, which were that.
the same should be a free public library, and that the city should
furnish annually not less than $1,000 for the support and main-
tenance thereof.

In *Warren v. Mayor of Lyons City,* 22 Iowa, 351, an owner
of land had in 1840 granted to the city a tract of land for a
public square.   In 1846, the Legislature passed an act authorizing
incorporated towns and cities to acquire, hold, improve, and dis-
pose of lands for public squares, parks, commons, and cemeteries.
The city subdivided the land theretofore dedicated for a public
square into lots and was about to sell same.   In enjoining the
city from so doing, the court said in the opinion:

"If the Legislature should undertake to authorize an indi-
vidual to use and appropriate property for a purpose violative of
the terms and conditions upon which it was held, no one would
be found to claim that such legislative act did not impair and
interfere with the obligation of the contract.   And why, we ask,
is not the like rule applicable, and the like good faith required,
as between a corporation, representing the public, and an in-
dividual?   Why may I not affix the terms, designate the uses and
purposes upon and for which I give to the public my farm or
my lots?   And upon what principle of law or morals is it that the
Legislature can say that this property may at the option of the
trustee, be used for another and different purpose?   'A.' dedicates

his ground for school purposes, for instance. The corporation, deeming some other place better suited to the object indicated, turns the dedicated property over to fishmongers, and tallow-candlers, or, if you please, to merchant princes, and wealthy house-holders, defiantly saying, 'You no longer have any interest in this property, but we can misuse the same without limit, and you can-not complain.' Such a doctrine would enable the state at pleas-ure to trifle with the rights of individuals, and we can scarcely conceive of a doctrine which would more effectively check every disposition to give for public or charitable purposes."

*Cary Library v. Bliss,* 151 Mass. 364, 25 N. E. 92, 7 L. R. A. 765, involves a state of facts somewhat similar to the facts involved in the case at bar. The donor had given to the city of Lexington a gift of $1,000, in accordance with the terms of a letter which provided that her gift should go to the inhabitants of the town to be held by the board of trustees, consisting of the selectmen and the school committee of the town for the time being and the settled ministers of the place. Her scheme contemplated the es-tablishment of a public library for the benefit of the city, to be supported in part by the income from the fund furnished by her and in part by money supplied by the town. Her letter required the town as a condition precedent to receiving the gift to vote to es-tablish a free public library and to provide a sum of money toward the settlement and support of it. The library was established and the donor made the original gift, which was followed later by other gifts from her, and the library was maintained for a time in compliance with the conditions of the gift. Later the Legisla-ture passed an act which authorized the city to transfer to a cor-poration all the funds and property held by the city for the purpose of a library; such corporation to take and hold said property un-der the terms of the donor, and to administer it in the same manner it had been administered by the city. The court held that the statute undertook materially to change the execution of the trust, and it was therefore void. In the opinion it is said:

"The acceptance by the town of Maria Cary's proposition contained in her letter created a contract, which was executed on her part by the payment of the money, and which continued bind-ing on the town and the trustees as to their conduct in reference to the charity."

It is fundamental that if a grant is made for a specific, limited, and defined purpose, the subject of the grant cannot be used for another purpose; and a diversion of the subject of the trust from the purposes for which the trust was created may be enjoined. *Warren v. Mayor of Lyons City, supra; Church v. City of Portland,* 18 Ore. 73, 22 Pac. 528, 6 L. R. A. 259; *Barnum et al. v Mayor & City Council of Baltimore,* 62 Md. 275, 50 Am. Rep. 219. Defendants attempt to justify their taking charge of a portion of the building for city hall purposes with the contention that the library may be maintained in a part of the building, without the use of the whole of it for that purpose; but we do not understand that the fact that the *cestui que trust* may not be in absolute need of the benefits of the trust ever authorizes the trustee to convert the trust or a portion thereof to his own use. For the same reason, upon receipt of the gift the municipal authorities might have said that a $5,000 building would prove fully adequate for a public library, and devoted the other $5,000 to building a separate building for a city hall. But a statement of this contention demonstrates its unsoundness. By accepting the gift, the city bound itself to levy each year the sum of $1,000 with which to keep up and support the free public library. It cannot levy and collect this sum of money and expend a part thereof in keeping up the library and a part in maintaining the library as a city hall for the accommodation of its officers and of private or public organizations, such as commercial clubs, without a misappropriation of the funds so levied and a violation of the trust; and, to prevent their doing so, they may be enjoined at the suit of the taxpayers of the city and beneficiaries of the trust. *Kellogg v. School Dist. No. 10, Comanche Co.,* 13 Okla. 285, 74 Pac. 110; *Marlow et al. v. School Dist. No. 4, Murray Co., et al.,* 29 Okla. 304, 116 Pac. 797; *Sexton v. Smith et al.,* 32 Okla. 441, 122 Pac. 686.

The order of the court below is reversed, and the cause remanded for further proceedings in accordance with the views herein expressed.

KANE, DUNN, and TURNER, JJ., concur; WILLIAMS, J., not participating.